# United States Court of Appeals

## For the Eighth Circuit

_____

No. 15-1857

_____

In re: LaToya L. Steward

*Debtor*

------------------------------

James C. Robinson

Critique Services, LLC

*Appellant*

Elbert A. Walton, Jr.; Debra Lynne Wilson

v.

LaToya L. Steward, *Debtor*

*Appellee*

E. Rebecca Case

*U.S. Trustee*

_____

No. 15-1988

_____

In re: LaToya L. Steward

*Debtor*

------------------------------

James C. Robinson

*Appellant*

Critique Services, LLC

Elbert A. Walton, Jr.

*Appellant*

Debra Lynne Wilson

v.

LaToya L. Steward, *Debtor*

*Appellee*

E. Rebecca Case

*U.S. Trustee*

_____

Appeals from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 12, 2016
Filed: July 7, 2016

_____

Before LOKEN, GRUENDER, and KELLY, Circuit Judges.

_____

-2-

KELLY, Circuit Judge.

Attorney James Robinson, Attorney Elbert Walton, and Critique Services, LLC, appeal from the judgment of the district court[1] affirming the judgment of the bankruptcy court[2] on LaToya Steward's motion to disgorge attorney's fees. Upon careful review of all issues raised, we affirm.

## I. Background

The issues in this case arose out of an extensive and chaotic procedural history, recounted here in the necessary detail. LaToya Steward filed a petition for Chapter 7 bankruptcy on June 17, 2011. She was represented by James C. Robinson, d/b/a Critique Services, LLC. Steward received a discharge on November 21, 2011, but before the discharge she reaffirmed a debt of $10,966.60 to Ford Motor Credit Company. Steward sought to rescind the reaffirmation agreement, but Robinson apparently abandoned his representation and did not assist her in doing so. On November 16, 2012, Steward filed a pro se motion to reopen her bankruptcy proceedings in order to discharge her debt to Ford. On December 4, 2012, Steward filed an adversary complaint against Ford, in which she asserted that Robinson's poor representation had caused her to miss the deadline to rescind the reaffirmation agreement. At a hearing on this complaint, the bankruptcy court advised Steward that she should amend her complaint, and on April 5, 2013, Steward filed an amended complaint against Robinson and Critique Services. On April 8, 2013, the bankruptcy court entered an order deeming Steward's complaint to be a motion to disgorge

[1]The Honorable Rodney W. Sippel, Chief Judge, United States District Court for the Eastern District of Missouri.

[2]The Honorable Charles E. Rendlen III, United States Bankruptcy Judge for the Eastern District of Missouri.

attorney's fees based on Robinson's inadequate representation, and set a hearing for May 8, 2013. On May 7, 2013, Elbert Walton entered his appearance on behalf of Robinson, d/b/a Critique Services,[3] and filed an untimely response to Steward's motion.

The hearing was eventually reset as a status conference for September 18, 2013. As the case progressed in advance of the September 18 hearing, the parties—Steward now represented by counsel—had extensive discovery disputes. Robinson moved to quash Steward's requests for discovery, and the bankruptcy court denied the motion as frivolous. Status conferences on the discovery issues were held on August 14, September 4, and September 11. Steward was eventually forced to file a motion to compel. After the September 18 status conference, the bankruptcy court noted Robinson's "willful noncompliance" with his discovery obligations,[4] granted Steward's motion to compel, ordered Robinson to pay the attorney's fees incurred in litigating the motion to compel, and warned both Robinson and Walton that further obfuscation would be met with sanctions. The court also ordered Robinson to provide information about his affiliation with Critique Services (i.e., whether Critique

---

[3]For clarity in this recitation of facts, we refer to Robinson, d/b/a Critique Services, as a single unit under the name "Robinson." Critique Services much later in the proceedings sought to be treated as an independent party, rather than as Robinson's corporate alter ego.

[4]Among other things, Robinson failed to timely respond to Steward's interrogatories and requests for production, repeatedly raised waived objections to the discovery requests, falsely represented to the bankruptcy court that he had provided complete responses when in fact he had declined to respond to most of the discovery requests, ignored communications from Steward's counsel, stated to Steward's counsel that he would provide no discovery without an order compelling him to, and, failing all that, accused Steward of perjury and the bankruptcy court of personal bias. Robinson refused to respond to such basic discovery requests as an interrogatory asking him to describe bar complaints filed against him and a request for production of tax and financial information.

-4-

Services had a corporate identity independent of Robinson or whether it was simply Robinson's corporate alter ego).

In the days following the September 18 status conference, Robinson filed multiple motions, including a motion to recuse the bankruptcy judge, a motion for judgment on the pleadings, a motion to set aside the order granting Steward's motion to compel, a motion for a protective order, and a motion to dismiss for lack of subject matter jurisdiction. The bankruptcy court denied all of Robinson's motions. At a status conference on October 1, 2013, the court determined that Robinson had not complied with the order compelling discovery and that he had no intention of doing so. On October 2, the bankruptcy court entered an order imposing sanctions on Robinson, which began to accrue on October 9, 2013. Consistent with the court's advisory to the parties at the September 18 status conference, the court sanctioned Robinson $1000 for each subsequent day of non-compliance with his discovery obligations.

On November 13, 2013, the bankruptcy court entered a second order on sanctions. The court ended the accrual of the daily monetary sanction, ordered payment of the accrued sanctions, and found Robinson in contempt of court pursuant to Fed. R. Civ. P. 37(b)(2)(A)(vii). Robinson attempted to appeal, characterizing the bankruptcy court's order as a final order for criminal sanctions, so the bankruptcy court entered a clarifying notice on December 2, 2013. The court stated that Robinson could purge the sanctions by complying with the order compelling discovery and participating appropriately in the discovery process.

Early in 2014, the parties engaged in settlement negotiations. However, on March 22, 2014, Steward notified the court that attempts to settle the case had failed. On April 3, the bankruptcy court entered a notice advising Robinson that the discovery deadline was April 11, 2014, and that if Robinson did not meet his discovery obligations by that date the court would impose further sanctions. The

court also advised Walton that it was considering imposing sanctions against him, for facilitating Robinson's obstreperous behavior and participating in such behavior himself, and set a deadline for him to file a brief on the matter. On April 10, Walton filed a motion to withdraw and Robinson filed a notice of dismissal of counsel. The bankruptcy court did not allow Walton to end his representation of Robinson, believing this to be an attempt to delay the case and avoid consequences for their joint ongoing refusal to comply with the court's orders.

Also on April 10, 2014, Steward filed a motion for approval of a settlement agreement. Steward also filed a notice stating that she believed she could no longer accept discovery from Robinson, given their settlement. On April 11, the bankruptcy court ordered Steward to accept discovery should Robinson attempt to provide it, on the basis that providing such discovery would allow Robinson to purge the sanctions he had accrued. That same day, Robinson filed a second motion to recuse the bankruptcy judge. Walton also filed a motion to substitute counsel based on an alleged conflict of interest with Critique Services. The bankruptcy court denied both motions on April 14, 2014.

Walton then sued the bankruptcy judge in his personal capacity, raising various claims of tortious interference. The suit was dismissed. On April 21, 2014, the bankruptcy court entered a notice directed to both Robinson and Walton, advising them that the court intended to impose sanctions based on false statements made over the course of the litigation and giving them an opportunity to respond. On April 22, Walton filed a third motion to recuse the bankruptcy judge on behalf of both Robinson and himself. The bankruptcy court denied that motion on April 23. Finally, on April 28, 2014, the bankruptcy court denied Steward's motion for approval of the settlement without prejudice, based on the fact that such a motion must be filed by the Chapter 7 Trustee rather than by the debtor. The Trustee did not refile the motion for settlement approval.

On June 10, 2014, the bankruptcy court entered judgment in favor of Steward. The court found Robinson in contempt, struck Robinson's claims and defenses, made final $30,000 in accrued monetary sanctions, ordered that Walton be jointly and severally liable for the $30,000 in sanctions, and imposed additional sanctions on Robinson and Walton in the amount of $19,720 for attorney's fees incurred by Steward's counsel in litigating discovery. The court also sanctioned Robinson and Walton for making false statements to the court by suspending them from practice before the United States Bankruptcy Court for the Eastern District of Missouri, and ordered that Robinson and Walton's actions be referred to the U.S. District Court for the Eastern District of Missouri, the Office of the U.S. Trustee, and the Office of Chief Disciplinary Counsel of the Missouri Supreme Court for any appropriate investigation and disciplinary action. Finally, the court awarded Steward a refund of the $495 in fees she paid to Robinson, but denied relief as to damages related to the reaffirmation of Steward's debt to Ford.

Robinson, Walton, and Critique Services (now acting as an independent party and represented by separate counsel) appealed to the district court. On March 31, 2015, the district court affirmed the bankruptcy court's judgment in all respects. Robinson, Walton, and Critique Services (collectively, Appellants) timely appealed, raising numerous issues, with varying degrees of merit, before us.[5] We address each issue in turn.

---

[5]Robinson and Walton appeal together, while Critique Services appeals separately, raising slightly different sets of issues. To minimize confusion, we treat the issues as having been raised by all appellants collectively, distinguishing them only when necessary.

## II. Steward's Standing to Bring Motion to Disgorge

Appellants first argue that Steward did not have standing to bring a motion to disgorge attorney's fees, because that claim properly belonged to the Chapter 7 Trustee.[6] A bankruptcy estate includes all of a debtor's legal and equitable interests as of the time of the commencement of the case. 11 U.S.C. § 541(a)(1); United States ex rel. Gebert v. Transp. Admin. Servs., 260 F.3d 909, 913 (8th Cir. 2001). The parties appear to agree on this much: To the extent Steward's claim for disgorgement existed at the time her bankruptcy petition was filed, it was included in the bankruptcy estate and could properly be brought only by the Trustee; but if the Trustee had abandoned the claim, Steward had the right to bring it on her own behalf. See Vreugdenhil v. Hoekstra, 773 F.2d 213, 215 (8th Cir. 1985). The district court found that the Trustee abandoned any interest in Steward's bankruptcy estate, returning to Steward the right to file a motion for disgorgement of attorney's fees. We review this factual determination for clear error. In re Reynolds, 425 F.3d 526, 531 (8th Cir. 2005).

Assuming that Steward's claim was property of her Chapter 7 bankruptcy estate, we find no clear error in the district court's conclusion that the Trustee abandoned this property. On July 26, 2011, before Steward filed her motion for disgorgement, the Chapter 7 Trustee certified that the bankruptcy estate was fully administered and requested that she be discharged from any further duties. On July 26, 2013, after Steward had filed her motion to disgorge attorney's fees and the case was reopened for adjudication of the motion, the Trustee again certified that the estate had been fully administered and asked to be discharged from any other duties.

---

[6]Appellants did not raise this issue before the bankruptcy court, and it was therefore considered by the district court in the first instance. In re Foster, 516 B.R. 537, 544 (B.A.P. 8th Cir. 2014), aff'd, 602 F. App'x 356 (8th Cir. 2015) ("Standing is a component of subject matter jurisdiction that may be challenged at any time during the proceeding.").

Though no explicit order of abandonment was entered in this case, there is sufficient evidence in the record from which the district court could have concluded that the requirements of abandonment were met. See 11 U.S.C. § 554(a) ("After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."). The record supports a conclusion that the parties had notice of the Trustee's intent to abandon Steward's disgorgement claim, and that a hearing under 11 U.S.C. § 341 (a meeting of creditors) took place at which the abandonment could presumably have been contested. Id.; cf. Vreugdenhill v. Navistar Int'l Transp. Corp., 950 F.2d 524, 526 (8th Cir. 1991) (holding that for property to be abandoned by operation of law pursuant to 11 U.S.C. § 554(c), the property must be formally scheduled). Appellants' failure to raise this issue before the bankruptcy court did result in some inconsistency in the record. But Appellants do not articulate how this inconsistency rendered the district court's factual finding of abandonment clearly erroneous, and the mere fact of the inconsistency alone is insufficient for us to so conclude—particularly where the Trustee did not take any actions that were incompatible with abandonment.

## III. Recusal

Appellants next argue that the bankruptcy court should have granted one of their three motions to recuse Bankruptcy Judge Rendlen from this case. They argue that Judge Rendlen's impartiality in this case "might reasonably be questioned," based on his service as United States Trustee for the Eastern District of Missouri from June 2003 to May 2006. During that time, the Trustee's Office pursued two adversary proceedings against Critique Services. Appellants assert that Judge Rendlen was aware of facts outside the record about Critique Services, and demonstrated bias by making various negative remarks about Robinson, Walton, and Critique Services. The district court, however, found that nothing in the record supported a finding that Judge Rendlen's impartiality "might reasonably be questioned by an objective, neutral observer," and upheld his denial of the motions

-9-

to recuse. We review the lower courts' decisions on recusal for abuse of discretion. Moran v. Clarke, 296 F.3d 638, 648 (8th Cir. 2002).

Though their positions on the basis for recusal have shifted as this case has progressed, Appellants now argue only that Judge Rendlen should have recused himself under 28 U.S.C. § 455(a).[7] Section 455(a) requires "[a]ny justice, judge, or magistrate judge of the United States [to] disqualify himself in any proceeding in which his impartiality might reasonably be questioned." As an initial matter, motions for recusal under § 455(a) must be timely. Tri-State Fin., LLC v. Lovald, 525 F.3d 649, 653 (8th Cir. 2008). "The timeliness doctrine under § 455 'requires a party to raise a claim at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim.'" Id. (quoting Fletcher v. Conoco Pipe Line Co., 323 F.3d 661, 664 (8th Cir. 2003)). Here, Appellants did not file their first motion to recuse until September 24, 2013, more than four months after their participation in the case began—and most notably, immediately after the bankruptcy court entered an order compelling discovery and indicated an unwillingness to tolerate further obfuscation.[8] The timeliness requirement under § 455 is intended "to

---

[7]Appellants have, at various times, argued for recusal pursuant to 28 U.S.C. § 455(a), 28 U.S.C. § 455(b)(1), and 28 U.S.C. § 144. Other than a passing reference to § 144—which does not apply to bankruptcy judges—Appellants provide specific argument only as to § 455(a).

[8]Appellants attempt to explain their untimeliness by asserting that they were not aware that Critique Services was considered a party to this case. We discuss Critique Services' status in this litigation further infra, at Section V. Insofar as this issue is relevant to the motions for recusal, suffice it to say that Robinson identified himself as "d/b/a Critique Services" from the very beginning of this litigation, and refused to provide discovery that would have clarified his affiliation with Critique Services. Based on the record before us, it is implausible that Appellants only realized the supposed conflict between Judge Rendlen and Critique Services in September 2013.

avoid the risk that the party might hold its application as an option in the event the trial court rules against it," which appears to be what happened here.  Id.

Even if the motions to recuse were timely, Appellants have not demonstrated that Judge Rendlen's impartiality might reasonably be questioned.  "A party introducing a motion to recuse carries a heavy burden of proof; a judge is presumed to be impartial and the party seeking disqualification bears the substantial burden of proving otherwise."  Fletcher, 323 F.3d at 664 (quoting Pope v. Fed. Express Corp., 974 F.2d 982, 985 (8th Cir. 1992)).  Moreover, a party is not entitled to recusal merely because a judge is "exceedingly ill disposed" toward them, where the judge's "knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings . . . ."  Liteky v. United States, 510 U.S. 540, 551 (1994).  Appellants have supplied no evidence from which we could conclude that Judge Rendlen was not impartial.   The only information in the record supporting such a conclusion comes from the allegations in Appellants' motions.  And Judge Rendlen's orders contravene those allegations:  In the orders denying the motions to recuse, Judge Rendlen explained that he was not personally involved with the United States Trustee's investigations into Critique Services and was exposed to no information relevant to Steward's motion to disgorge attorney's fees. On this record, we cannot find that Appellants "[bore] the substantial burden" of proving that Judge Rendlen was not impartial.  Neither the bankruptcy court nor the district court abused its discretion in denying Appellants' multiple motions for recusal.

IV. Construing Steward's Complaint as Motion to Disgorge

Appellants assert that the bankruptcy court erred in docketing Steward's pro se complaint as a motion to disgorge attorney's fees.  But pro se pleadings are to be construed more liberally than those prepared by counsel.  See Wishnatsky v. Rovner, 433 F.3d 608, 610 (8th Cir. 2006) (citing Haines v. Kerner, 404 U.S. 519, 520 (1972)).  In the case, as the  district court correctly determined, the bankruptcy court

-11-

properly exercised its authority to construe Steward's pro se complaint as a motion to disgorge and to order that the improperly docketed pleading be docketed correctly.

Appellants cite to Federal Rule of Bankruptcy Procedure 9005 as the source of error. Rule 9005 adopts the concept of harmless error in bankruptcy proceedings, stating that "[w]hen appropriate, the court may order the correction of any error or defect or the cure of any omission which does not affect substantial rights." But Rule 9005 is inapplicable to this docketing issue, because the concept of harmless error does not affect the court's inherent authority to control proper docketing of pro se pleadings. To conclude otherwise would be to suggest that Appellants had a substantive right not to face a motion for disgorgement based on the allegations that they had provided inadequate representation to Steward. Such a suggestion finds no support in our case law, and would be fundamentally incompatible with the purpose of liberally construing pro se pleadings. See Castro v. United States, 540 U.S. 375, 381 (2003) ("Federal courts sometimes will ignore the legal label that a pro se litigant attaches to a motion and recharacterize the motion in order to place it within a different legal category. They may do so in order to avoid an unnecessary dismissal, to avoid inappropriately stringent application of formal labeling requirements, or to create a better correspondence between the substance of a pro se motion's claim and its underlying legal basis." (citations omitted)).

V. Critique Services' Status and Participation in the Litigation

Appellants make three related arguments regarding Critique Services' status as a litigant in this case. First, Critique Services argues that it was never properly served as an independent party, and so the bankruptcy court did not have jurisdiction to compel it to comply with discovery requests. Second, Critique Services argues that because no discovery requests were directed to it, the bankruptcy court erred in imposing sanctions for failure to participate in discovery. Finally, Robinson and Walton argue that they cannot be held accountable for Critique Services' failure to

provide discovery, because they had no control over Critique Services' actions. We review the lower courts' factual findings for clear error and legal conclusions de novo. Reynolds, 425 F.3d at 531.

Appellants did not make the first two arguments before the bankruptcy court, raising them for the first time before the district court. Noting this failure, the district court nevertheless addressed the substance of Appellants' arguments, ultimately concluding that Critique Services had been properly served and that discovery requests were properly directed to it. We agree. Appellants' continued refusal to disclose the nature of Robinson's affiliation with Critique Services was a significant barrier to the progress of the litigation before the bankruptcy court. If Critique Services had genuinely wanted to act as an independent party, it could at any time have made its intention clear by complying with the bankruptcy court's order to explain or clarify its relationship with Robinson. We find no error in the district court's finding that the bankruptcy court correctly determined that Robinson and Critique Services were properly treated as a single entity, or its conclusion that Critique Services waived its challenge to the bankruptcy court's jurisdiction through its conduct in the litigation. See Yeldell v. Tutt, 913 F.2d 533, 539 (8th Cir. 1990). Appellants raise the third argument for the first time in this court, and we decline to consider it. Ames v. Nationwide Mut. Ins. Co., 760 F.3d 763, 770 (8th Cir. 2014), cert. denied, 135 S. Ct. 947 (2015) (we do not generally consider issues raised for the first time on appeal, except in the limited circumstances where failing to consider such an issue would result in a clear miscarriage of justice).

VI. Mootness

Appellants assert that the bankruptcy court should have dismissed Steward's claim sua sponte for lack of subject matter jurisdiction after Appellants directed a payment of $199 to Steward's counsel in October 2013. They argue that this payment was the amount of the attorney's fee that Steward had paid to Robinson and Critique

-13-

Services, and that its refund mooted her claim for disgorgement of attorney's fees. Because mootness is jurisdictional, we consider this issue despite Appellants' failure to raise it before the bankruptcy court. Ali v. Cangemi, 419 F.3d 722, 724 (8th Cir. 2005).

Appellants have failed to show that Steward's claim was moot. A case is not moot so long as the parties retain any "concrete interest, however small, in the outcome of the litigation." Chafin v. Chafin, 133 S. Ct. 1017, 1023 (2013) (quoting Knox v. Serv. Employees Int'l Union, Local 1000, 132 S. Ct. 2277, 2287 (2012)). Here, Steward's motion to disgorge sought significantly more than a mere refund of the $199 fee she had paid to Robinson and Critique Services. The bankruptcy court ultimately found that Steward was entitled to disgorgement of $495, a finding that appears to be uncontested by Appellants and was not clearly erroneous. Moreover, the record does not show that it was Robinson and Critique who in fact made the $199 payment to Steward. And Steward's counsel indicated that Steward would not accept this amount in settlement of the issues raised by the motion to disgorge. Even if we considered the payment of $199 a partial refund, Steward claimed more than that in damages. She therefore retained a concrete interest in the outcome of the litigation, and the bankruptcy court retained the power to grant effectual relief. See Chafin, 133 S. Ct. at 1023. The district court correctly concluded that Steward's claim was not mooted by the alleged refund of $199 in attorney's fees.

## VII. Denial of Motion to Approve Settlement

Next, Appellants argue that the bankruptcy court abused its discretion in denying Steward's motion to approve the parties' settlement agreement. Appellants did not raise this argument before the district court. We therefore do not reach the question of whether the bankruptcy court abused its discretion in rejecting the settlement, see Ames, 760 F.3d at 770, and note only in passing that the bankruptcy court rejected the settlement without prejudice based on the parties' failure to meet

a procedural requirement,[9] an action highly unlikely to constitute an abuse of discretion. See Fed. R. Bankr. P. 9019 (the bankruptcy court may approve a settlement only "[o]n motion by the trustee and after notice and a hearing"); In re Cockhren, 468 B.R. 838, 844 (B.A.P. 8th Cir. 2012) (we review the bankruptcy court's decision to approve or reject a settlement for abuse of discretion, which "occurs if the court bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidences").

Appellants did, however, raise a related issue before the district court, arguing that the bankruptcy court erred by ordering Steward to accept discovery and by sanctioning Appellants for their failure to meet their discovery obligations after the parties had ostensibly reached an agreement that did not require the discovery process to continue. They argue that when the parties settled, the bankruptcy court no longer had authority to impose sanctions based on their refusal to comply with the court's prior orders. This issue is easily resolved based on the fact that, as the district court correctly determined, the case was never actually settled. See In re Petters Co., 455 B.R. 166, 172 (B.A.P. 8th Cir. 2011) (settlement is contingent on the bankruptcy court's approval). Though Steward had filed a motion for approval of the parties' settlement agreement, the bankruptcy court denied that motion without prejudice based on Fed. R. Bankr. P. 9019's requirement that such a motion be filed by the Chapter 7 Trustee. Appellants cite no authority to support the proposition that merely filing a motion to approve a settlement divests the bankruptcy court of authority to manage the progress of a case. Because settlement in this case was never completed,

_____

[9]We again note some inconsistency in both requiring that the trustee file the motion to approve settlement and finding that the trustee had previously abandoned Steward's claim for disgorgement on behalf of the estate. However, the bankruptcy court correctly applied the letter of Rule 9019 based on the circumstances of the case before it at the time, and any inconsistency is the result of Appellants' failure to raise their claims before the lower courts.

-15-

the bankruptcy court retained authority to order Steward to accept discovery and to sanction Appellants for failing to comply with the court's orders.

## VIII. Unclean Hands

In their final, and perhaps most frivolous, effort to argue that Steward's claim for disgorgement should have been dismissed, Appellants assert that the bankruptcy court should have applied the doctrine of unclean hands to her claim. The doctrine of unclean hands is equitable, intended "to serve the interests of public policy and protect the integrity of the courts." Pony Express Cmty. Bank v. Campbell, 206 S.W.3d 399, 402 (Mo. Ct. App. 2006). The doctrine is applied when its application would "promote[] right and justice . . . considering all of the facts and circumstances of a particular case." Id. (quoting Sangamon Assoc. Ltd. v. Carpenter 1985 Family P'ship Ltd., 165 S.W.3d 141, 145–46 (Mo. 2005) (en banc)). It is *not* intended to "aid wrongdoers who attempt to use it as a shield for their own misconduct." Id. (quoting Nelson v. Emmert, 105 S.W.3d 563, 569 (Mo. App. 2003)).

Steward admittedly made several false statements in her initial petition for bankruptcy, including falsely stating her address and falsely claiming her three nephews as dependents. However, she voluntarily corrected these false statements in 2013, explaining that Robinson and his staff had directed her to include the false information in her petition and that she did not understand the consequences of doing so until the first meeting of creditors in 2011. The district court found that, given Robinson and Critique Services' role in Steward's wrongdoing, Appellants were not entitled to benefit from the doctrine of unclean hands, and the bankruptcy court did not err in refusing to dismiss Steward's claim on this basis. We agree. Moreover, we note that the unclean hands doctrine is properly used to bar a claim only when the wrongful conduct at issue is the source of that claim, which is not the case here. Graham Const. Servs. v. Hammer & Steel Inc., 755 F.3d 611, 620 (8th Cir. 2014).

-16-

IX. Sanctions

Finally we reach the crux of this case: the significant sanctions imposed on Appellants by the bankruptcy court. We review the imposition of sanctions by the bankruptcy court for abuse of discretion. In re Kujawa, 270 F.3d 578, 581 (8th Cir. 2001). Appellants make three separate arguments as to the sanctions imposed in this case. First, they argue that the monetary sanctions—$30,000 plus $19,720 in attorney's fees—were excessive in light of the small sum at issue in the case. This argument was not raised before either the bankruptcy court or the district court, and Appellants have made no argument that manifest injustice will result if we decline to consider it. See Ames, 760 F.3d at 770. We therefore will not deviate from our general rule that we do not consider arguments raised for the first time on appeal. Even if we did reach this issue on the merits, we would be disinclined to find an abuse of discretion. Though $49,720 in monetary sanctions is a significant sum, it is proportionate to Appellants' repeated and drawn-out bad faith conduct in this case. Appellants repeatedly ignored the bankruptcy court's orders despite being warned of the consequences, persistently refused to comply with the most basic requirements of litigation, and prejudiced Steward by forcing her to remain involved in the case while Appellants engaged in a protracted power struggle with the bankruptcy court.

Second, Appellants argue that the bankruptcy court improperly imposed penalties for criminal contempt, because they had no opportunity to purge themselves of contempt, and that the court's contempt order failed to comply with applicable procedural rules. Civil contempt is distinguished from criminal contempt by the presence of a purgation provision, which allows the contemnor to purge himself of contempt by complying with the court's orders. In re Mayex II Corp., 178 B.R. 464, 470 (Bankr. W.D. Mo. 1995). "It is well established that bankruptcy courts have the authority to exercise civil contempt power," which is intended to coerce compliance with court orders or to compensate for damages associated with non-compliance. Id. at 469–70. In this case, the bankruptcy court explicitly indicated that the contempt

sanctions imposed were civil in nature, explained exactly how Robinson and Walton might purge themselves of the sanctions, and gave them multiple opportunities to do so. In fact, this was the reason for the court's order requiring Steward to accept any discovery provided by Appellants even after a motion for settlement approval was filed—simply by providing discovery, Appellants could have purged themselves of contempt. The mere fact that Appellants' failure to comply with the court's orders caused the contempt sanctions to ultimately come due does not render those sanctions criminal in nature. Furthermore, Appellants fail entirely to explain how the bankruptcy court's finding of contempt failed to comply with the procedural rules requiring notice and a hearing. The record shows that Appellants had multiple notices of the impending sanctions and multiple opportunities to respond, and appeared before the court on multiple occasions before the sanctions were made final. We agree with the district court that the bankruptcy court's imposition of sanctions for civil contempt was proper.

Third, Robinson and Walton argue that the bankruptcy court did not have the authority to unilaterally suspend them from practice under the local rules governing attorney discipline. The district court found that the suspension was proper under the bankruptcy court's inherent authority to discipline attorneys appearing before it and pursuant to the local rules authorizing exercise of that authority, and we agree. Bankruptcy courts have the authority to sanction persons appearing before them, and this authority includes the right to "control admission to [their] bar." In re Burnett, 450 B.R. 116, 132 (Bankr. E.D. Ark. 2011) (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991)); Law v. Siegel, 134 S. Ct. 1188, 1194 (2014); In re Clark, 223 F.3d 859, 864 (8th Cir. 2000). Local Rule 12.02 for the Eastern District of Missouri states that

> [a] member of the bar of this Court and any attorney appearing in any action in this Court, for good cause shown and after having been given an opportunity to be heard, may be disbarred or otherwise disciplined . . . .

and Rule IV-A of the Rules of Disciplinary Enforcement for the Eastern District of Missouri states that

> [f]or misconduct defined in these Rules, and for good cause shown, and after notice and opportunity to be heard, any attorney admitted to practice before this court may be disbarred, suspended from practice before this court, reprimanded or subjected to such other disciplinary action as the circumstances may warrant.[10]

As the district court found, the bankruptcy court carefully and thoroughly detailed the misconduct that was the basis for Robinson and Walton's suspension, and provided ample notice and opportunities to be heard. We conclude, as did the district court, that the bankruptcy court's suspension of Robinson and Walton from practice in the Bankruptcy Court for the Eastern District of Missouri was a proper exercise of its authority and did not constitute an abuse of discretion.

## X. Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

_____

---

[10]Though Robinson and Walton attempt to rely on Rule V of the Rules of Disciplinary Enforcement, that rule simply states that a judge *may refer* disciplinary matters to counsel appointed by the district court if such a referral is warranted.