In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-2683

DENNY RAY ANDERSON,

*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:13-cv-01734-TWP-MJD — **Tanya Walton Pratt**, *Judge.*

ARGUED JANUARY 10, 2017 — DECIDED AUGUST 2, 2017

Before WOOD, *Chief Judge*, and ROVNER and HAMILTON, *Circuit Judges*.

WOOD, *Chief Judge*. At the time Denny Ray Anderson pleaded guilty to being a felon in possession of a firearm, the district court had only a general knowledge of Anderson's mental-health problems. The court knew that Anderson had been diagnosed as a paranoid schizophrenic and that he was on psychotropic medication. But it did not know what other

illnesses Anderson had, what medication he had been pre-
scribed, and how the drugs affected his functioning. The court
also was unaware that Anderson had only spotty access to his
medication while in jail awaiting trial. His appointed counsel,
who had observed Anderson behaving unusually at points
since his detention began, never requested a competence eval-
uation or hearing.

Anderson's plea agreement prevented him from directly
appealing his conviction and sentence, but he was nonethe-
less entitled to file a motion for collateral relief under
28 U.S.C. § 2255. He did so, supporting his motion with two
arguments: first, that he was not competent at the time of his
guilty plea because of his illnesses and the effects of the med-
ications he was taking; and second, that his attorney provided
constitutionally defective assistance for failing to challenge
his competence. The district court rejected his petition out-
right. On appeal, he requests an evidentiary hearing to de-
velop facts related to these interrelated claims. We agree that
a hearing is appropriate.

**I**

Anderson's mental health was a recurring theme in the un-
derlying offense for which he now seeks relief under section
2255. He was indicted on October 19, 2011, for being a felon
in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1)
and 924(e), a charge to which he ultimately pleaded guilty. At
the government's request, he was held in Indiana's Marion
County Jail pending trial. Although the court had appointed
Anderson counsel, he still filed several *pro se* motions. In one,
he asked the court to dismiss his attorney because his attorney
was "not getting medical [r]ecords." Anderson also alleged
that his appointed lawyer had violated his constitutional

rights by seeking a continuance. His counsel resisted the request to withdraw, but Anderson told the court that he would rather represent himself than have this lawyer remain on the case.

After a hearing in February 2012, the court decided to grant Anderson's request for a new lawyer. It appointed attorney Jesse A. Cook to replace the first lawyer. About six months later, on August 16, 2012, Anderson filed with Cook's assistance a petition to enter a guilty plea. At the same time, the parties submitted a written agreement that provided Anderson would plead guilty in return for a sentence of 15 years' imprisonment. In the deal, Anderson expressly waived his right to bring a direct appeal from the conviction and sentence. He did not waive his right to file any kind of collateral attack.

The district court held a change of plea hearing on August 27, 2012. At the start of the proceeding, the court called Anderson and Cook to the lectern. The transcript reveals that Anderson started to approach the podium but apparently changed course. The court summoned him again: "Come right here. Where are you going, Mr. Anderson?" Anderson said nothing, but the government's attorney remarked: "Ready to run around for a while." The court then told Anderson, "You have to stay in here." That ended the episode, and the court proceeded to obtain Anderson's plea.

Later in the hearing, the district court asked about Anderson's mental health:

> Court: Have you been treated recently for any mental illness or addictions to alcohol or narcotic drugs of any kind?

Anderson: I'm on psychotropic drugs right now.

Court: Okay. What's your diagnosis?

Anderson: Paranoid schizophrenia and a few other things. I don't know exactly everything.

Court: So, are you currently under the influence of any drugs or medication?

Anderson: Medication.

Court: Okay. Does your medication affect your ability to understand today's proceedings?

Anderson: Not that I know of, Your Honor.

Court: Okay. So, right now you're thinking clearly and you understand what's going on?

Anderson: Right. I mean, as good as I can, yeah.

The court did not press Anderson to explain what he understood (and what he did not), nor did it ask what medication he was taking. Instead, it continued the colloquy with questions about his familiarity with the charge and his knowledge of his legal rights. Anderson acknowledged speaking with his attorney and said that he was pleased with her advocacy on his behalf—a marked contrast from his dissatisfaction with his first lawyer.

The court then proceeded to obtain Anderson's guilty plea. In response to the court's questions, Anderson said that he was pleading guilty of his own free will and that he was, indeed, guilty. The following exchange then happened:

Court: … Mr. Anderson, do you understand that the offense to which you are pleading guilty, because it's a felony offense, if the plea is

accepted, you will be adjudged guilty of that of-
fense, and this adjudication may deprive you of
valuable civil rights, such as the right to vote,
the right to hold public office, the right to serve
on the jury, and the right to possess any kind of
firearm. Do you understand?

Anderson: Yeah.

Court: Okay. Knowing—

Anderson: That's pretty good.

Court: I'm sorry?

Anderson: That's pretty good.

Court: Knowing all of these factors, do you still
wish to enter this plea of guilty?

Anderson: Yes.

Anderson's peculiar statement ("That's pretty good") went unexamined; instead, the district court proceeded with the colloquy. In response to all of the remaining questions, Anderson gave one- or two-word answers, and those answers were uniformly affirmative. At the end, the court accepted Anderson's guilty plea, finding that Anderson was "fully competent and capable of entering an informed plea," that he knew about the nature of the charge and consequences of the plea, and that his plea was "knowing and voluntary."

The presentence investigation report (PSR) prepared for the November 1, 2012 sentencing hearing noted that Anderson said that he had been diagnosed with a host of psychological disorders, including, but not limited to, bipolar disorder, schizophrenia, chronic depression, and attention deficit disorder. It reported that his medication regimen

included Thorazine (an antipsychotic medication used to treat schizophrenia and manic-depressive disorder), Artane (a drug used to treat symptoms of Parkinson's disease; Anderson said that the drug had been prescribed to treat side effects of his other medication), Tegretol (a prescription used to prevent and control seizures which is sometimes used to treat bipolar disorder and schizophrenia), and Ritalin. The PSR also noted that the probation office had not reviewed all of Anderson's recent records because his health care provider in early 2011—whom Anderson saw after he was released from prison in connection with an earlier offense—had not responded to the office's request. Anderson had told the probation office that despite his best efforts he had been unable to obtain his medication since he was released earlier that year, but that he had been thinking "more clearly" since he began receiving medication at the jail.

The topics of Anderson's mental health and medication came up numerous times during sentencing. First, all parties agreed that Anderson had not been taking his prescriptions at the time of the offense, and his lack of medication was cited as a factor in both the current offense and his earlier ones. Second, in discussing one of his objections to the PSR's characterizations of his priors, Anderson defended to the court his three thefts from Meijer stores on a peculiar ground. He suggested that they were justified because the store had fired him after he was in a car accident and was thus unable to perform his job up to the store's standards. The district court admonished him that stealing was "still a bad thing to do" and against the law. Anderson noted that it was "only a [class] D felony." Third, defense counsel Cook argued that Anderson's difficulty in obtaining medication justified a sentence below the guidelines range, as called for in the plea

deal. The prosecution similarly cited Anderson's mental-health troubles in asking for the agreed-upon sentence.

Finally, Cook reported that she had seen Anderson's behavior fluctuate over the course of her representation of him. Cook attributed this to the jail's inconsistent delivery of his medication. Each time Anderson was moved to a different cellblock, a period would follow in which Anderson would not receive the "right medication," as she described it. Cook said it was "pretty clear" that when Anderson "[is] not medicated, he has an extremely difficult time conforming his behavior to what … the Court would expect." And so Cook sent the court the "full list" of Anderson's prescribed medications (and a medical record listing his "primary diagnosis" as schizophrenia) with the hope that the information would get conveyed to the Bureau of Prisons. Anderson reiterated his concern about sporadic access to his medications immediately after the court announced his sentence: "[I]t's just one day[,] they will give me part of it …. And then the next time I might not get it at all. Like, this morning, they came to give me my meds, and they didn't have all my meds for me." In turn, the court ordered the probation office to report to someone (unclear to whom) that Anderson was having problem getting his medication.

None of this information precipitated a pause in the sentencing hearing, despite its troubling implications for Anderson's competence. Noting that it previously had found Anderson "fully competent and capable of entering an informed plea," the court sentenced Anderson to 180 months' imprisonment—the statutory minimum, given Anderson's criminal history, and eight months less than the low end of his sentencing guidelines range of 188 to 235 months.

On October 28, 2013, Anderson filed a motion under section 2255 seeking an evidentiary hearing, the appointment of counsel, and relief from his conviction and sentence. His motion alleged in relevant part that: (1) his plea had not been knowing, intelligent, and voluntary, because of his mental illnesses and medication, and (2) his counsel provided ineffective assistance for failing to raise a capacity claim.

The district court denied his motion without an evidentiary hearing. It noted that Anderson repeatedly had told the court that he was entering a knowing and voluntary plea. The court continued that it was "well aware" of Anderson's mental health problems, and that it believed that Anderson was able to consult with his lawyer "with a reasonable degree of rational understanding." It concluded that there was no need for an evidentiary hearing because Anderson had not alleged facts that, if true, would entitle him to relief.

We granted Anderson a certificate of appealability on May 13, 2016, on the question whether he was denied his right to plead guilty competently and intelligently, and we recruited current counsel (for whose efforts we are grateful) to represent him. On September 1, 2016, in response to a motion from Anderson, we expanded the certificate to include ineffective assistance of counsel.

## II

On appeal, Anderson stresses his request for an evidentiary hearing to develop facts regarding his capacity to plead guilty and be sentenced, as well as his contention that trial counsel was constitutionally ineffective for failing to request a competence evaluation or hearing. He appears to concede that outright relief on the merits would be premature.

A district court should hold such an evidentiary hearing whenever the federal prisoner alleges facts that, if proven, would entitle him to relief. *Torres-Chavez v. United States*, 828 F.3d 582, 586 (7th Cir. 2016); see also 28 U.S.C. § 2255. The petitioner's burden for receiving a hearing is "relatively light." *Torres-Chavez*, 828 F.3d at 586. The district court should deny an evidentiary hearing only when the motion and records "conclusively show" that the petitioner is not entitled to relief. 28 U.S.C. § 2255(b). If the court decides that no hearing is necessary, we review that determination only for an abuse of discretion. *Boulb v. United States*, 818 F.3d 334, 339 (7th Cir. 2016).

**A**

Because Anderson's capacity to plead guilty undergirds his ineffective assistance of counsel claim, we begin with the former. Due process prohibits the trial of a defendant who lacks mental competence. *Drope v. Missouri*, 420 U.S. 162, 171–72 (1975). This requirement, at its core, preserves the right to a fair trial. See *id*. at 172. A defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and have "a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam) (quotation marks omitted); accord *Drope*, 420 U.S. at 172. The competence requirement is not limited to defendants who proceed to trial; it also protects those, like Anderson, who enter pleas. *Godinez v. Moran*, 509 U.S. 389, 391, 398 (1993). Nor is competence irrelevant after the guilt phase of a criminal case—it applies to sentencing proceedings as well. *United States v. Garrett*, 903 F.2d 1105, 1115 (7th Cir. 1990). In addition to finding that the defendant satisfies this threshold

level of competence, the trial court also must ensure that the
defendant is pleading guilty knowingly and voluntarily. See
*Godinez*, 509 U.S. at 400–01 & n.12. This companion require-
ment ensures that the defendant "understand[s] the signifi-
cance and consequences of a particular decision" and that his
decision is not coerced. *Id*. at 401 n.12.

We begin with the obvious: Anderson suffered from a se-
vere psychotic disorder. At the time of the change-of-plea
hearing, the district court knew that Anderson was a paranoid
schizophrenic, and that he had been diagnosed with that and
"a few other things." Anderson's disclosure should have
alerted the court to the possibility of a competence issue, even
if his medical history standing alone did not trigger the need
for an evaluation. See *United States v. Morgano*, 39 F.3d 1358,
1374 (7th Cir. 1994) (district court properly focused compe-
tence inquiry on defendant's mental state at the time, rather
than decades-old medical history). Persons in the criminal jus-
tice system often have diagnosed mental illnesses. See, *e.g.*,
Jennifer Bronson & Marcus Berzofsky, *Indicators of Mental
Health Problems Reported by Prisoners and Jail Inmates, 2011–12*,
U.S. Dep't of Justice, Bureau of Justice Statistics
(June 2017), www.bjs.gov/content/pub/pdf/imhprpji1112.pdf
(last visited Aug. 2, 2017) (more than one third of federal pris-
oners reported being told they had a mental health disorder);
see also *Eddmonds v. Peters*, 93 F.3d 1307, 1315 (7th Cir. 1996)
(noting the Constitution "does not necessarily forbid trial of
the mentally ill"). The court did not inquire about Anderson's
"other things," but moved directly into the remainder of the
inquiry prescribed by Federal Rule of Criminal Procedure 11.

The need for a more probing inquiry became apparent—indeed, pressing—when Anderson disclosed his use of unspecified psychotropic drugs. A defendant's use of such potent medications can, by itself, create a "substantial doubt" about a defendant's fitness to plead guilty. *McManus v. Neal*, 779 F.3d 634, 639 (7th Cir. 2015). Here, that concern was amplified by the dearth of information regarding exactly *what* drugs Anderson was on, and how they affected his cognition—matters the court left unexplored. See *Burt v. Uchtman*, 422 F.3d 557, 566 (7th Cir. 2005) (the court's knowledge that defendant is on psychotropic drugs, but lack of knowledge about what drugs those were, weighs heavily in favor of the need for a competency hearing). Anderson's belief about the effects of his medication is inadequate assurance that he was capable of entering a plea: A person grappling with a serious mental illness or under the influence of psychotropic drugs cannot be assumed to have a reliable understanding of his faculties. Worse, Anderson acknowledged some *inability* to think clearly and participate in the proceedings when he told the court that he understood what was going on "as good as I can."

Because the district court lacked a full picture of Anderson's mental health, its finding that Anderson had the capacity to plead guilty rests on a flawed factual foundation that must be explored in a hearing. To begin with, the court should have ascertained what medication Anderson was on and how it affected his thinking before proceeding to accept his guilty plea. Had it done so, it probably would have learned that he received his medication irregularly during his pretrial detention—a fact that defense counsel apparently knew, but which she disclosed only at sentencing. Once the court had this information, it then could have made an

informed decision about the need for a competence hearing or a psychiatric evaluation. See 18 U.S.C. § 4241; *United States v. Weathington*, 507 F.3d 1068, 1073–74 (7th Cir. 2007).

The same problem taints Anderson's sentencing hearing. By this time, the court knew more: the PSR informed it about Anderson's multiple mental illnesses and the fact that his medication regimen included the powerful antipsychotic prescription Thorazine. Yet it neither determined how the Thorazine, along with his other medications, affected his functioning, nor explained why it regarded this step as unnecessary. On this record, we cannot be confident that Anderson was competent at the time of his sentencing. Moreover, his earlier statement that he was functioning much better now that he was receiving medication from the jail was contradicted by his attorney's observation of his behavioral irregularities and the fact that he was not receiving his medications on a regular basis. All of this should have been explored in an evidentiary hearing.

**B**

Anderson also seeks an evidentiary hearing to develop his ineffective assistance of counsel claim. He contends that his lawyer rendered constitutionally inadequate assistance by failing to request a competence evaluation or a hearing to determine if he was fit. This argument goes hand-in-hand with his due process argument. We can be brief, since we already have determined that a hearing is necessary.

The Sixth Amendment guarantees a criminal defendant the right to be represented by effective counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). A defendant claiming that his defense counsel was inadequate must show *both* that

counsel's performance was deficient, and that but for the deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different. *Id*. at 687–88, 693. Defense counsel performs deficiently when she fails to "investigate possible defenses or make reasonable decisions that particular investigations are unnecessary." *Warren v. Baenen*, 712 F.3d 1090, 1100 (7th Cir. 2013) (quoting *Burt*, 422 F.3d at 566). When the defendant argues that counsel should have pursued a fitness hearing, the question is whether there is a "reasonable probability that the defendant would have been found unfit had a hearing been held." *Id*.

In conducting our Sixth Amendment inquiry, we apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Swanson v. United States*, 692 F.3d 708, 714 (7th Cir. 2012). Nonetheless, evidentiary hearings often are needed because ineffective assistance claims generally turn on facts outside the trial record. *Osagiede v. United States*, 543 F.3d 399, 408 (7th Cir. 2008). For instance, the record rarely will reveal whether counsel's actions were or were not considered, tactical choices. See *Torres-Chavez*, 828 F.3d at 586 (quoting *Osagiede*, 543 F.3d at 408).

Just as we have questions about Anderson's capacity to plead guilty, we have questions about Cook's decision not to raise Anderson's capacity to the court. Cook knew that Anderson had a lengthy criminal record that had been fueled by untreated mental illnesses. And Cook knew that the jail inconsistently gave Anderson his medication during his pretrial detention, and that these gaps in treatment resulted in periods of instability. This was enough to call into question Anderson's ability to consult with counsel and his understanding of the proceeding. See *Dusky*, 362 U.S. at 402.

The government tries to bat away the need for a hearing by focusing on Cook's description of Anderson's behavior when he *was* medicated. True, a court generally is "entitled to rely on representations from an attorney that h[er] client is competent." *Chichalky v. United States*, 926 F.2d 624, 634 (7th Cir. 1991). But that is only part of the story, and the less important part. Cook never flatly stated that Anderson was fit; she suggested that Anderson was fit *sometimes*. And Cook's apparent diligence in other aspects of her representation of Anderson does not erase the importance of a full exploration into Anderson's competence. Because, in the words of section 2255(b), "the motion and the files and records of the case" do not "conclusively show that the prisoner is entitled to no relief," counsel should have pushed for a hearing.

Whether Anderson was prejudiced by that failure is a question closely related to the merits of his capacity claim. If the capacity claim founders, then Anderson may have a hard time showing prejudice from his counsel's decision to abstain from exploring his capacity further.

### III

This record does not permit us to decide once and for all whether Anderson had the capacity to be sentenced and to enter a knowing and voluntary plea. We REMAND so that Anderson can explore these issues in an evidentiary hearing.