In the

# United States Court of Appeals
## For the Seventh Circuit

No. 20-3273

RYAN T. MCMULLEN,

*Petitioner-Appellant,*

*v.*

GARY DALTON and MELISSA STEPHENSON,

*Respondents-Appellees.*

Appeal from the United States District Court for the
Southern District of Indiana, Terre Haute Division.
No. 2:19-cv-00356-JRS-MJD — **James R. Sweeney, II**, *Judge.*

ARGUED JANUARY 11, 2023 — DECIDED OCTOBER 4, 2023

Before WOOD, BRENNAN, and SCUDDER, *Circuit Judges.*

BRENNAN, *Circuit Judge.* Ryan McMullen was convicted of violating Indiana's drug possession laws and received a lengthy prison sentence. On state postconviction review he unsuccessfully argued that his trial counsel had rendered ineffective assistance. He then sought federal habeas relief under 28 U.S.C. § 2254, which the district court denied.

McMullen appeals. The state[1] contends his appeal is moot because the Indiana trial court later modified McMullen's sentence. We do not agree, though, because he is not serving a new sentence. Rather, the court suspended the remainder of McMullen's sentence and placed him on probation.

On McMullen's ineffective assistance of counsel claim, our evaluation of deference to the decision of the Indiana Court of Appeals under the Antiterrorism and Effective Death Penalty Act (AEDPA), differs from the district court's. Notwithstanding this difference, we agree with the district court's conclusion under the performance prong that the decision of the Indiana Court of Appeals was contrary to *Strickland v. Washington*, 466 U.S. 668 (1984). We part ways with the district court, however, on its conclusion as to the prejudice prong.

McMullen has satisfied § 2254(d) on his claim of ineffective assistance of counsel, so we vacate the district court's decision to deny McMullen's habeas petition. But that does not necessarily entitle him to a writ of habeas corpus. The state court records here lack sufficient factual information. So, we

---

[1] When McMullen filed his pro se petition, he was incarcerated at Wabash Valley Correctional Facility in Carlisle, Indiana. The Superior Court of Grant County, Indiana, granted McMullen's motion to modify his sentence on April 19, 2021, and he is currently on probation. Technically, McMullen remains in state custody for purposes of 28 U.S.C. § 2254(a).

A petitioner seeking habeas relief must name the state custodial officer as the respondent. Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts. The officials in charge of McMullen's custody are his probation officer Gary Dalton, and Melissa Stephenson, who supervises Grant County, Indiana's probation department. They are named as Respondents-Appellees.

remand for an evidentiary hearing and for the district court
to consider whether a writ of habeas corpus should issue.

**I**

After a jury trial in Grant County Circuit Court, McMullen
was convicted of possession of cocaine[2] and marijuana. *See*
IND. CODE §§ 35-48-4-6(b)(1), (b)(3)(B)(iii), 35-48-4-11(1). The
facts underlying these convictions were detailed by the Indi-
ana Court of Appeals on direct review. *See McMullen v. State*,
No. 27A02-1009-CR–1165, 2011 WL 2507057, at *1–3 (Ind. Ct.
App. June 23, 2011). Attorney Joe Keith Lewis represented
McMullen at trial and at sentencing. McMullen challenges
Lewis's post-trial assistance, so we describe several key devel-
opments following the guilty verdicts.

*Pre-Sentencing.* The Probation Office prepared a presen-
tence investigation report (PSR), which detailed McMullen's
lengthy criminal history. This included adult felony convic-
tions for criminal recklessness with a deadly weapon and
marijuana possession. His adult misdemeanor convictions
included pointing a firearm, illegal possession of alcohol, car-
rying a handgun without a license, marijuana possession, op-
erating a vehicle never having received a license, operating a
motor vehicle while intoxicated, and criminal mischief.
McMullen also has a lengthy juvenile record. At the time of
sentencing, he had violated the terms of his adult probation,
and had pending charges for attempted murder, felony crim-
inal recklessness, and felony battery by means of a deadly
weapon.

---

[2] Though McMullen was convicted of two counts of cocaine posses-
sion, the state trial court vacated one of the counts. The vacated count is
not at issue here.

The PSR included details provided by McMullen about his family and background. McMullen said his childhood was "not great." His mother had a cocaine addiction and lived with a boyfriend who abused her and McMullen. Both of McMullen's parents have criminal convictions, and his father did not figure in his life. McMullen was also removed from his mother's care on at least one occasion "due to abuse." He was raised by his mother until age seven, when he was placed with his grandmother. At age twelve, McMullen moved back in with his mother, but that placement "didn't work out." McMullen acknowledged that his mother was "trying to change her life" and that he was "trying not to hold a grudge or to blame [his mot]her for [his] childhood."

The PSR also contained McMullen's account of his mental health:

> The Defendant stated his mental health is 'okay.' The Defendant stated he has never been diagnosed with a mental health disorder but has had some concerns about depression. The Defendant stated he is not taking any medication for a mental health disorder. The Defendant stated he was involved with counseling as a juvenile when held at YOC [Youth Opportunity Center] and in other programs. The Defendant stated he was also in counseling at Family Services Society when he was removed from his mother's care due to abuse.

Elsewhere the report stated that McMullen "has an anger control issue" and problems with alcohol, particularly after his cousin was killed. The PSR did not include a mental health assessment by a medical professional.

In preparation for sentencing, Lewis said he "really didn't do anything independently to develop any mitigation" and instead "just relied upon the presentence investigation report." Lewis also spoke with McMullen's grandmother about him on more than one occasion. Lewis knew McMullen "came from a seriously troubled background" and was "well aware of [McMullen's] difficult upbringing." Lewis did not speak to any of McMullen's other friends, explaining that he did not "think that mitigation would stack up" in light of McMullen's "pending attempted murder charge and three other drug charges." Lewis did not consider having a mental health professional evaluate McMullen.

*Sentencing.* A sentencing hearing took place in September 2010. Citing McMullen's criminal history, the prosecution argued that McMullen "has been a menace to this community since the age of ten years old" and that he had "no social redeeming factors." Lewis responded that most of the offenses described in the PSR were "minor." McMullen had an elevated "Power Orientation" score, which "measures the individual's need for power and control." Lewis argued that these "factors also exist in a person who's been abused and/or neglected," and that there were references in the PSR to McMullen's abuse and neglect.

McMullen was sentenced to fifty years in prison for cocaine possession and to a concurrent prison term of three years for marijuana possession. In its written sentencing order, the court found two aggravating circumstances: McMullen's "lengthy history of criminal or delinquent behavior, despite being only 24 years of age, which history includes numerous failures to abide by the terms and conditions of probation," and the fact that the offenses "were committed while

he was a fugitive from this Court's warrant." At sentencing the court observed that McMullen "has had a lengthy history with the system," that "the county has spent an awful lot of money attempting to rehabilitate" him, and that McMullen had not demonstrated "any type of success on probation." The court weighed these considerations against the mitigating factor that imprisonment would result in undue hardship to McMullen's dependents, but it found this factor to be substantially outweighed by the aggravating circumstances.

*Post-Sentencing.* McMullen's statutory maximum sentence for cocaine possession was upheld on direct appeal. *McMullen*, 2011 WL 2507057 at *3. The Indiana Supreme Court denied his petition to transfer. *McMullen v. State*, 2011 WL 7491292 (Ind. Sept. 2, 2011).

McMullen sought postconviction relief from the state trial court. He argued that Lewis had rendered ineffective assistance at sentencing by failing to "conduct a reasonable investigation of McMullen's character, background, and mental status, arrange for him to be evaluated by a mental health professional, and present evidence of mitigating circumstances at the sentencing hearing." On July 25, 2017, the court held an evidentiary hearing at which McMullen and Lewis testified. In support of his petition, McMullen submitted affidavits from friends, family, and a licensed marriage and family therapist, as well as reports concerning his mental health—none of which had been produced before or introduced at the sentencing hearing.

For example, McMullen submitted a report from the Youth Offender Center, a psychiatric residential treatment facility, that had evaluated him at age thirteen. The report summarized that McMullen's educational testing "reveals low

average cognitive ability with commensurate achievement scores," and that his diagnostic testing "suggested clinically significant concerns with social isolation, anxiety, and conduct." He was also diagnosed with severe, childhood-onset conduct disorder and early onset dysthymic disorder.

McMullen also presented a psychological evaluation from Dr. Robin Kohli, a licensed clinical psychologist. Kohli had evaluated McMullen in 2016 and diagnosed him with panic disorder, posttraumatic stress disorder, other substance use disorder, and antisocial personality disorder. Kohli noted McMullen's history of childhood abuse and neglect.

The state trial court ruled that Lewis did not render ineffective assistance of counsel to McMullen. It concluded that "what was outcome-determinative at sentencing was not the quality of the argument that his attorney made on the day of sentencing, but rather McMullen's increasingly troubling behavior and history which occurred in the thirteen years prior to the day of sentencing." The Indiana Court of Appeals affirmed, and we detail its conclusions in our evaluation of McMullen's claim. The Indiana Supreme Court denied McMullen's petition to transfer. *McMullen v. State*, No. 27A01-1710-PC-2555, 2018 WL 4212230 (Ind. Aug. 30, 2018).

McMullen then petitioned for federal habeas relief under 28 U.S.C. § 2254, alleging Lewis had provided him ineffective assistance of counsel. This claim is considered under the familiar two prongs of *Strickland*: a defendant must show that counsel's performance was constitutionally deficient, and that this performance prejudiced the client's defense. 466 U.S. at 687. The district court resolved the claim in a detailed written decision. It reviewed Lewis's performance at sentencing de novo and found it deficient, but under deferential review

concluded that Lewis's performance did not prejudice McMullen. The court denied the petition but issued a certificate of appealability.

Back in the state trial court, McMullen renewed a motion he had previously made to modify his sentence under Indiana Code § 35-38-1-17(e). After an evidentiary hearing, that court "suspended" the remainder of McMullen's sentence and placed him on probation until September 28, 2049 "with the intention that he participate in the Community Transition Program and Reentry Court … following the service of" another sentence. McMullen completed the Community Transition Program's home detention period and graduated from Grant County Reentry Court, so the state court reduced his probation term by one-third.[3]

## II

We first consider if McMullen's habeas petition is moot because the state court modified his sentence.

The state contends this appeal should be dismissed because McMullen's sentence has expired. A new sentence was imposed, the state believes, when the state trial court modified McMullen's sentence. The state cites Indiana Code § 35-38-1-17(e), which provides:

---

[3] Grant County Circuit Court Judge Mark E. Spitzer presided over all of McMullen's proceedings, from before the jury trial through postconviction.

> At any time after:
>
> (1) a convicted person begins serving the person's sentence; and
>
> (2) the court obtains a report from the department of correction concerning the convicted person's conduct while imprisoned;
>
> the court may *reduce or suspend the sentence and impose a sentence* that the court was authorized to impose at the time of sentencing.

*Id.* (emphasis added). The state reads the italicized language to mean that a new sentence is imposed each time the state court modifies a sentence. Oral Arg. at 13:00–13:54.

We do not agree with the state's reading. The Indiana Supreme Court has explained that "the penal consequences of a guilty finding are triggered only by the entry of a judgment of conviction." *Gardiner v. State*, 928 N.E.2d 194, 197 (Ind. 2010). Though Indiana courts have not previously spoken to this reading, *Gardiner* suggests that only "the entry of judgment of conviction upon … [an] offense constitutes a new and different judgment effectively vacating the prior judgment." *Id.* Because no separate judgment of conviction was entered after modification, no new penalty was imposed against McMullen. Instead, his sentence was suspended. He is therefore serving the remainder of the initially imposed sentence, but on probation.[4]

The state further contends that during the sentence modification hearing, McMullen could have raised the same

---

[4] The parties do not argue about the effect of the one-third reduction in McMullen's probation term, so we do not address it.

arguments his counsel allegedly failed to make at his sentenc-
ing. This contention appears to be directed at whether
McMullen exhausted state remedies. Modification of a sen-
tence under Indiana law is not part of the direct review pro-
cess. The Indiana Court of Appeals explained in *Hawkins v.
State*, 951 N.E.2d 597, 600 (Ind. Ct. App. 2011), that sentence
review under Indiana Appellate Rule 7(b) and sentence mod-
ification under Indiana Code § 35-38-1-17 are "separate ave-
nues of relief." That is, "[s]entence review on direct appeal
pursuant to Indiana Appellate Rule 7(B) addresses whether
the sentence is inappropriate in light of the facts available at
the time of sentencing." *Id.* at 599. "A sentence modification,
on the other hand, allows the trial court to take into account
additional circumstances, such as the defendant's good be-
havior while imprisoned, that might merit the reduction or
suspension of his sentence." *Id.* McMullen did not have to ex-
haust the modification process to bring this habeas petition,
so this appeal is not moot.

## III

We next consider the denial of McMullen's ineffective as-
sistance of counsel claim against Lewis. A district court's de-
nial of habeas relief is reviewed de novo. *Crowell v. Sevier*, 77
F.4th 539, 543 (7th Cir. 2023).

## A

McMullen requests relief under 28 U.S.C. § 2254, so he
must show that the state courts' adjudication of his claim "re-
sulted in a decision that was contrary to, or involved an un-
reasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States." *Id.* at
§ 2254(d)(1). In applying this standard, our review includes

the "last related state-court decision that … provide[s] a relevant rationale," *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). Here, that is the postconviction decision of the Indiana Court of Appeals.

A threshold question is whether the district court correctly applied AEDPA's deferential standard, which applies only to claims that were "adjudicated on the merits in State court proceedings." § 2254(d); *Westray v. Brookhart*, 36 F.4th 737, 746 (7th Cir. 2022). Otherwise, review is de novo. *Id*.

The district court reviewed the performance prong de novo, concluding that "[t]he Indiana Court of Appeals did not explicitly find that trial counsel's performance was reasonable." On this point McMullen agrees with the district court. But the state disagrees, contending the state appellate court adjudicated McMullen's *Strickland* claim on the merits. For the state, the relevant question is whether any reasons were provided for why counsel did not perform deficiently; because if there were, the claim was adjudicated. The state gets the better of this point.

The Supreme Court has explained that AEDPA deference requires a "decision" from a state court on a claim. *Harrington v. Richter*, 562 U.S. 86, 92 (2011). This court has similarly stated that a claim is "adjudicated on the merits" under § 2254(d), where there is "a decision finally resolving the parties' claims, with *res judicata* effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." *Eichwedel v. Chandler*, 696 F.3d 660, 672 (7th Cir. 2012) (quoting *Muth v. Frank*, 412 F.3d 808, 815 (7th Cir. 2005)).

The Indiana Court of Appeals wrote, "because of the presentence investigation report, the sentencing court was

already well aware of McMullen's background and any mental health concerns." *McMullen*, 2018 WL 3131420, at *11. If the sentencing court knew about McMullen's background and mental health, we do not understand the state appellate court to have left open the possibility that Lewis's performance was deficient. Said otherwise, it does not follow that Lewis should have presented additional evidence of mitigating circumstances if the sentencing court was already "well aware" of the evidence McMullen proffers. We conclude, therefore, that the Indiana Court of Appeals rendered a decision on McMullen's ineffective assistance of counsel claim for purposes of § 2254(d). AEDPA deference is therefore owed to the state appellate court's resolution on the performance prong of the *Strickland* inquiry.

Whether AEDPA deference applies on *Strickland*'s prejudice prong is another question. The Indiana Court of Appeals addressed this component of McMullen's sentencing claim on the merits, so the district court presumed, and the parties on appeal conclude, that deference applies to the prejudice prong. But in its postconviction decision, the state appellate court said that the additional mitigation evidence McMullen offered at the postconviction hearing "would have done nothing to account for or explain the illegal possession of marijuana and cocaine for which McMullen was convicted." That statement is not legally correct, as mitigating evidence need not necessarily excuse or diminish the defendant's illegal conduct. *See Laux v. Zatecky*, 890 F.3d 666, 673 (7th Cir. 2018) (duty to present mitigating evidence goes beyond facts that will directly "undermine or rebut the prosecution's case") (quoting *Williams v. Taylor*, 529 U.S. 362, 398 (2000)). So, the state appellate court erred in its consideration of the prejudice component. De novo review of the prejudice prong is thus

warranted. *See Mosley v. Atchison*, 689 F.3d 838, 844 (7th Cir. 2012) (state court decision contrary to federal law not entitled to AEDPA deference and is reviewed de novo with reviewing court applying correct legal standard).

So in contrast to the district court, we conclude that AEDPA deference applies on the performance prong, and we review the prejudice prong de novo.

## B

McMullen submits that Lewis performed deficiently because he failed to:

- investigate McMullen's mental health or have him evaluated by a mental health professional;

- conduct a reasonable investigation into McMullen's background; and

- present sufficient evidence of mitigating circumstances at sentencing.

These claims overlap, as does the parties' discussion of them.

For relief under the "unreasonable application" prong of § 2254(d)(1), the state court's application of precedent must be "objectively unreasonable," not merely "incorrect or erroneous." *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003). Said another way, the habeas petitioner needs to demonstrate that the state appellate court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. We "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id.* at 104. (quoting *Strickland*, 466 U.S. at 689). Under

the deferential review of AEDPA, application of *Strickland* is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009); *see Meyers v. Gomez*, 50 F.4th 628, 643 (7th Cir. 2022).

The Supreme Court in *Wiggins* set forth the standard for an attorney investigating and presenting mitigating evidence at sentencing for a Sixth Amendment ineffective assistance claim. On the performance prong, counsel may claim that limited background investigation reflects a tactical judgment not to present mitigating evidence to pursue an alternative strategy. The concern then is not whether mitigation evidence should have been presented, but whether the investigation supporting the decision not to introduce mitigating background evidence is itself reasonable. The attorney's performance is measured for reasonableness under prevailing professional norms. *Id*. at 520–23.

In *Wiggins*, counsel's decision not to expand his investigation beyond a PSR and certain social service records fell short of professional standards in that locale at that time. There, any reasonably competent attorney would have realized that pursuing certain leads was necessary to making an informed choice among possible defenses. Records underscored the unreasonableness of that attorney's conduct. They suggested the attorney's failure to thoroughly investigate stemmed from inattention rather than strategic judgment.[5] *Wiggins* provides that strategic choices made after less than complete investigation are reasonable only to the extent that reasonable

---

[5] The Court also determined that a violation of 28 U.S.C. § 2254(d)(2) had occurred, as social service records did not reflect what the sentencing court said they did. *Wiggins*, 539 U.S. at 528.

professional judgments support the limits of the investigation. *Id*. at 523–34.

The district court judged Lewis's performance to be deficient. The state disagrees, but its arguments are not persuasive on any of the three alleged deficiencies described above.

*Mental health investigation and evaluation.* In *Strickland*, the petitioner contended in part that his Sixth Amendment right to counsel was violated when his attorney failed to request a psychiatric report in preparation for sentencing. 466 U.S. at 675. As stated later in *Wiggins*, the Court emphasized in *Strickland* that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691.

This court applied this standard in the non-capital sentencing context in *Brown v. Sternes*, 304 F.3d 677, 691–92 (7th Cir. 2002). There, a petitioner claimed that counsel was ineffective for failing to thoroughly investigate his mental health issues and present them to the court at sentencing. *See id.* at 680. Where it is apparent from "sources of information not requiring fresh investigation[] that the defendant has some mental or other condition that will repay further investigation … then the failure to investigate will be ineffective assistance." *Id.* at 692 (quoting *Stewart v. Gramley*, 74 F.3d 132, 135 (7th Cir. 1996)). In *Brown* the petitioner's medical records, which showed a previous diagnosis of mental disorders, were available to counsel, so failure to further investigate was ineffective assistance. *See id.* at 693–94.

Lewis performed deficiently, McMullen claims, by not investigating his mental health or having him evaluated by a mental health professional. There was no reason for Lewis to

believe that McMullen's mental health should be evaluated, the state submits, because McMullen described his mental health as "okay." But the Indiana Court of Appeals failed to analyze whether reasonable professional judgment supported Lewis's limited investigation into McMullen's mental health. The state appellate court did not consider whether Lewis's decision to limit his investigation despite information in the PSR—including that McMullen had concerns about depression, was referred to counseling when at the Youth Opportunity Center, and had problems with alcohol—was a reasonable professional judgment.

*Background investigation.* McMullen argues that Lewis did not perform any investigation beyond reviewing the PSR. Lewis failed to search for documents, and ignored pertinent avenues for further investigation, such as McMullen's removal from his mother's care at age seven, and his parents' criminal records. To McMullen, Lewis's statement that "I didn't think that mitigation would stack up" does not excuse his decisions, and information from McMullen's grandmother should have led a reasonably competent attorney to investigate further.

The state responds that Lewis competently prepared for sentencing. The PSR, which he used, referenced a number of background details. He also spoke with the grandmother more than once, as she could provide the most detailed description of McMullen's childhood.

In *Strickland* the Court stated, "the need for further investigation" into a potential line of defense "may be considerably diminished or eliminated altogether" when the facts supporting that defense "are generally known to counsel," 466 U.S. at 691, based on information such as the defendant's statements.

*See id.* Lewis was "aware that [McMullen] came from a seriously troubled background" and had a "difficult upbringing." Specifically, because Lewis "relied upon the presentence investigation report," he knew that McMullen's mother had been addicted to cocaine and that her boyfriend had abused her and McMullen. The PSR also alerted Lewis that McMullen had been removed from his mother's care, that his parents had criminal convictions, and that his father was not a figure in his life.

But as in *Wiggins*, Lewis did not expand his investigation beyond McMullen's PSR. As noted by the district court, exploring leads—such as the red flags in McMullen's PSR—was necessary here to constitute a sufficient investigation to support a reasonable professional judgment. Indeed, at the postconviction hearing Lewis admitted that questions about McMullen's background and effort to develop such information "probably should have been asked for and should have been done." McMullen's criminal history was a primary driver for the parties' sentencing arguments and the sentencing court's reasoning. More investigation into McMullen's background could have yielded information which may have impacted the sentencing decision. Given that the state was asking for the statutory maximum prison term, Lewis's investigation should have gone beyond just review and use of the PSR, and discussion of McMullen with a knowledgeable relative.

*Presenting mitigating circumstances.* Lewis performed deficiently at sentencing, McMullen argues, by failing to present sufficient evidence of mitigating circumstances. He points out that Lewis did not introduce evidence or call a witness at the sentencing hearing. Lewis did argue several mitigating

circumstances, though, including that most of McMullen's offenses were for minor violations, several of his cases were dismissed, and McMullen suffered abuse and neglect as a child. Lewis also corrected a mistake in McMullen's criminal history, and pointed out how the PSR was internally inconsistent as to whether McMullen blamed others for his crimes.

Yet which mitigating circumstances Lewis could present was a function of the scope of his investigation before sentencing. Lewis admitted he knew the advantages of mitigation testimony. His statement that given the other charges McMullen faced, he "didn't think that mitigation would stack up," may or may not amount to a strategic decision requiring deference. *Cf. Strickland*, 466 U.S. at 699 (explaining that because the "aggravating circumstances were utterly overwhelming," counsel "could reasonably surmise from his conversations with respondent that character and psychological evidence would be of little help").

To be fair to Lewis, at times his advocacy greatly helped McMullen. Lewis persuaded the trial court to vacate one of the cocaine counts McMullen faced. And after the jury verdict, Lewis raised with the state that it had incorrectly alleged that McMullen was a habitual offender under Indiana Code § 35-50-2-8(a). The state agreed to dismiss that penalty enhancer, potentially saving McMullen prison time.

But under the reasoning above, we agree with the district court that McMullen has established Lewis's deficient performance. Deference under AEDPA to the Indiana Court of Appeals decision on the performance prong does not change our conclusion that the state appellate court's application of *Strickland* was objectively unreasonable.

**C**

The district court concluded that McMullen failed to establish that these deficiencies in Lewis's representation of McMullen prejudiced his defense. Notwithstanding Lewis's deficient performance, the district court could not "say the [state appellate court] decision was unreasonably wrong or lacking in justification," so it did not grant McMullen relief. We consider that question de novo.

To establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A petitioner must show that a reasonable probability existed at sentencing that he would have received a different sentence after a constitutionally sufficient mitigation investigation. *Sears v. Upton*, 561 U.S. 945, 956 (2019) (per curiam). The Court stated in *Wiggins* on the prejudice prong that counsel must have failed to discover powerful mitigating evidence, and there must be a reasonable probability that a competent attorney aware of defendant's history would have introduced that evidence at sentencing. 539 U.S. at 534–38.

On postconviction review, the Indiana Court of Appeals ruled that there was no reasonable probability that McMullen would have received a different sentence. It agreed with the state trial court that "what was outcome-determinative at sentencing was not the quality of the argument that [Lewis] made on the day of sentencing, but rather McMullen's increasingly troubling behavior and history which occurred in the thirteen years prior to the day of sentencing." The state appellate court explained, "[t]he additional mitigating evidence that

McMullen argues could have been offered by his friends and family … would not have favorably impacted his sentence." It concluded, "that same evidence would have done nothing to account for or explain the illegal possession of marijuana and cocaine for which McMullen was convicted." The court understood that "because of the presentence investigation report, the sentencing court was already well aware of … any mental health concerns."

Before us, the state agrees with the Indiana Court of Appeals, setting the probability of a different outcome as "zero." To the state, the putative mitigating evidence was cumulative of the PSR, and sometimes contradicted it.

McMullen responds that the state appellate postconviction ruling was objectively unreasonable. Among other errors, he argues that the unpresented evidence was not cumulative, and that the state appellate court mischaracterized the nature and sources of the mitigating evidence. To him, it was an unreasonable application of *Strickland* to conclude that Lewis's performance did not prejudice him at sentencing. Even more, the state appellate court's finding of no prejudice was based on an unreasonable determination of fact under 28 U.S.C. § 2254(d)(2), when it stated that the sentencing court was aware of "any" mental health concerns of McMullen.

We agree with McMullen on the prejudice prong. The state appellate court failed to evaluate the totality of the available mitigation evidence, which is significant and compelling. First, it did not consider whether the unpresented mental health evidence would have led the trial court to sentence McMullen to less than the statutory maximum. Instead, its consideration was limited to whether the evidence that "could have been offered by his friends and family" had a

reasonable probability of affecting the sentencing outcome. Second, the mitigating evidence McMullen references is different in kind, rather than cumulative. True, the PSR references McMullen's background, but that information is from McMullen, and the rest of the mitigating evidence is from others. Further, the affidavits and reports which Lewis did not procure describe the type, frequency, and severity of abuse McMullen seeks to offer in mitigation. Yet, the sentencing court mischaracterized the nature and sources of the mitigating evidence. That proof did not come only from McMullen's friends and family, but also from mental health reports. The Indiana Court of Appeals did not catch this point.

McMullen received a maximum sentence, based in large part on his poor criminal history. The undiscovered mitigating evidence could have influenced the state trial court's sentencing decision. The likelihood of a different result is sufficient to undermine confidence in the outcome of the sentencing hearing.

This conclusion is bolstered by the state appellate court's reliance on a clear factual error: that the PSR made the sentencing court "well aware" of "any mental health concerns." The specific diagnoses of McMullen's mental health—panic disorder, posttraumatic stress disorder, other substance use disorder, and antisocial personality disorder—were not available to the sentencing court. It is also probative that neither the state trial or appellate court mentioned Dr. Kohli's diagnoses of McMullen. The sentencing court was aware of "any" mental health concerns, according to a statement by the Indiana Court of Appeals, but clear and convincing evidence shows that is not correct. 28 U.S.C. § 2254(e)(1). That statement reflects an unreasonable determination of the facts,

considering the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2).

For these reasons, we disagree with the conclusion of the district court on the prejudice prong. The decision of the Indiana Court of Appeals that McMullen was not prejudiced by his counsel's performance is contrary to *Strickland* and rested on an erroneous factual finding.

## D

McMullen "has satisfied § 2254(d) on his claim of ineffective assistance of counsel, but that does not necessarily entitle him to the issuance of the writ." *Campbell v. Reardon*, 780 F.3d 752, 772 (7th Cir. 2015). "Whether the petitioner is actually entitled to relief—whether under § 2254(a) he is in custody in violation of the Constitution or laws or treaties of the United States—is a separate question." *Id.*, (quoting *Mosley*, 689 F.3d at 853).

On limited occasions, the decision under § 2254(a) whether a writ should issue cannot be reached because of the state of the record. *See Jordan v. Hepp*, 831 F.3d 837, 849 (7th Cir. 2016); *Campbell*, 780 F.3d at 772; *Taylor v. Grounds*, 721 F.3d 809, 824 (7th Cir. 2013); *Mosley*, 689 F.3d at 853. In that circumstance, the district court may hold an evidentiary hearing. *See* 28 U.S.C. § 2254(e). The "AEDPA governs the availability of evidentiary hearings on federal habeas review, and generally bars them except in narrow exceptions." *Westray*, 36 F.4th at 754 (quoting *Ward v. Jenkins*, 613 F.3d 692, 698 (7th Cir. 2010). One such exception is when the state court record does not contain sufficient factual information to adjudicate a claim, and the factual predicate could not have been previously

discovered through the petitioner's exercise of due diligence. 28 U.S.C. § 2254(e)(2)(A)(ii).

In that situation we have remanded a case for an evidentiary hearing. For example, in *Taylor*, this court concluded that a state supreme court unreasonably applied Supreme Court law, but that despite holding an evidentiary hearing, the postconviction trial court had refrained from making key findings of fact. Because this court could not be certain whether the petitioner was in custody in violation of § 2254(a), the case was remanded for an evidentiary hearing. *Id*. at 824. The same was true in *Stitts v. Wilson*, 713 F.3d 887 (7th Cir. 2013). There, the Indiana Court of Appeals had unreasonably applied *Strickland* in determining whether trial counsel had limited an alibi investigation. Because a critical factual question remained concerning the actual extent of trial counsel's investigation, this court remanded to the district court for an evidentiary hearing to resolve the issue. *Id*. at 895–97. *See also Anderson v. United States*, 981 F.3d 565, 578 (7th Cir. 2020) (remanding for an evidentiary hearing where the record contained insufficient information for the court to determine whether counsel acted based on strategic or other reasons); *Price v. Thurmer*, 514 F.3d 729, 733 (7th Cir. 2008) ("When the merits of a petition for habeas corpus cannot be determined from the record compiled in the state court, through no fault of the petitioner … the district court is authorized, and may be directed by the court of appeals, to conduct its own hearing and make appropriate findings").

This is such an occasion. McMullen and Lewis testified at the state postconviction hearing in July 2017. But neither that hearing's transcript nor the entire state court record reveal whether Lewis had strategic reasons for the limits of his

investigation into McMullen's mental health and background and the presentation of mitigating circumstances, or whether his decisions and actions were from a lack of diligence. On that question there is no factual finding to review. *See Jordan*, 831 F.3d at 849; *Campbell*, 780 F.3d at 772; *Taylor*, 721 F.3d at 824; *Stitts*, 713 F.3d at 895–97. The state courts rejected McMullen's postconviction petition without this key factual finding, which as noted above was compounded by other mistakes: the sentencing court could not have been "well aware" of "any mental health concerns" because McMullen's psychological diagnoses were not presented, and the state courts incorrectly required a nexus between mitigating evidence and the evidence of conviction. Lewis has suggested that his performance as counsel may have fallen short. And Lewis may have a difficult time offering a strategic reason for not seeking to develop further mitigation evidence. But we think the prudent course is to afford that opportunity before any relief would issue, so we allow for that in an abundance of caution.

"If the AEDPA poses no bar to an evidentiary hearing, then the petitioner is entitled to a hearing in federal court 'if (1) he has alleged facts which, if proved, would entitle him to habeas relief, and (2) the state courts, for reasons beyond [petitioner's] control, never considered his claim in a full and fair hearing.'" *Westray*, 36 F.4th at 754 (quoting *Ward*, 613 F.3d at 698). We have concluded that Lewis's performance was deficient. But his strategic reasons, or lack thereof, may determine whether McMullen is entitled to a writ. McMullen diligently tried to develop the facts of his claim in the state courts, notwithstanding their errors. So, we conclude this circumstance merits a hearing.

This procedure does not contravene *Cullen v. Pinholster*, 563 U.S. 170 (2011), in which the Supreme Court ruled that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Id*. at 181. "We already have gone through the (d)(1) process"; the state "gets one more chance, under [§ 2254](e)(2), to demonstrate that [Lewis] had a strategic reason for his failure[s]." *Jordan*, 831 F.3d at 849.

We remand for the district court to consider evidence and argument as to whether Lewis had any strategic reasons for the limits of his investigation into McMullen's mental health and background and the presentation of mitigating circumstances. The district court can then decide whether or not Lewis was constitutionally ineffective such that McMullen's petition for habeas corpus should be granted under § 2254(a).

**IV**

For these reasons, we VACATE the district court's denial of habeas corpus relief and REMAND for an evidentiary hearing in accord with this opinion. In returning this case to the district court, we do not express a view as to whether or not the writ should issue.