In the

# United States Court of Appeals
## For the Seventh Circuit

No. 23-2777

XENGXAI YANG,

*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 21-cv-1281 — **William C. Griesbach**, *Judge.*

ARGUED APRIL 18, 2024 — DECIDED AUGUST 16, 2024

Before SYKES, *Chief Judge*, and BRENNAN and SCUDDER, *Circuit Judges*.

BRENNAN, *Circuit Judge*. We face for the first time the question whether procedural default bars a competency claim initially raised on collateral review.

Xengxai Yang robbed a credit union in Appleton, Wisconsin. Given his medical history and some strange aspects of his offense behavior, Yang raised an insanity defense. After a

bench trial, the district court rejected Yang's insanity defense, found him guilty, and sentenced him to 168 months' imprisonment. Yang did not directly appeal his conviction. Instead, he moved to vacate his conviction and sentence under 28 U.S.C. § 2255. Following an evidentiary hearing and post-hearing briefing, the district court denied Yang's motion, and he appeals.

After review of Supreme Court precedent on competency, our court's caselaw, and the decisions of other circuits, we conclude that procedural default bars Yang's competency claim. His request for special treatment of competency claims on collateral review does not persuade us otherwise. So, we affirm the district court's denial of Yang's § 2255 motion.

## I

## A

Wearing a black mask, a black sweatshirt, and sunglasses, and armed with a sawed-off, semiautomatic .22 caliber rifle, Yang robbed the Community First Credit Union in Appleton, Wisconsin. Law enforcement arrested Yang a block away. After being advised of his *Miranda* rights and while being questioned, Yang admitted to the robbery. When asked why he did it, Yang responded, "I decided to try something new today, so I robbed the bank."

A federal grand jury indicted Yang for armed bank robbery (Count One), brandishing a firearm during a crime of violence (Count Two), and unlawful possession of a firearm (Count Three). Yang retained an attorney, Kevin Musolf, and pleaded not guilty at his arraignment.

Less than a month before his trial date, Yang filed a Notice of Insanity Defense under Federal Rule of Criminal Procedure

12.2(a). Though the notice was untimely, the district court found good cause for the delay and ordered Dr. Kent Berney to examine Yang to opine on whether Yang was insane at the time of the charged offenses. Neither Yang, the government, nor the court raised the issue of Yang's competency.

Based on his examination of Yang and review of available records, Dr. Berney noted "a well documented history of neurocognitive limitations." But Dr. Berney believed Yang was "malingering memory deficits" as indicated by the inconsistencies in his ability to recall information about the robbery during his psychological examination, in contrast with his recall during the post-arrest interview and in a pretrial service report interview. Dr. Berney ultimately opined "that Mr. Yang, at the time of the alleged crime … did not experience a severe mental disease that resulted in Mr. Yang being unable to appreciate the nature and quality or the wrongfulness of his acts." Rather, at the time of the crime, Yang experienced "a depressive disorder due to other medical conditions with mixed features as a result of a closed head injury." Due to Yang's malingering, however, Dr. Berney was "not able to definitively rule in or out Mr. Yang's possible neurological anomaly which would be consistent with a severe mental defect."

Following Dr. Berney's report, Yang withdrew his insanity defense and entered into a plea agreement under which he would be convicted of Counts One and Two.

The district court then held a change of plea hearing. Concerned about Yang's competency, the court asked Yang's counsel if he had any doubts about Yang's ability to proceed. Musolf had none. After placing Yang under oath, the court engaged in a lengthy colloquy with him, explaining the purpose

of the hearing, eliciting some basic biographical information, and asking whether Yang had read and discussed the plea agreement with Musolf before signing it. The court also asked Yang if he was taking any medications at that time that might affect his ability to understand the proceedings or to make decisions. Yang responded "[n]o, I didn't take anything." At the same time, Yang said he had stopped receiving his medication and that the voices were "still here and there but not anymore." But he responded "no" when asked if the voices interfered with his ability to communicate with his attorney. Throughout the hearing, the district court frequently asked Yang if he understood what was being described or explained. Yang said he understood, and he asked no questions.

At one point the district court asked Yang to explain a jury trial in his own words. Yang responded, "[j]ury trial is when there's people from the outside that comes in and testifies or like to see if you're guilty or not guilty." The district court then provided a thorough explanation of a jury trial and the rights Yang would give up by pleading guilty. Yang had no questions and answered "no" when asked if anyone had made any promises or threats in connection with his plea. He affirmed that he was pleading guilty because he was guilty.

In establishing the factual basis for Yang's plea, the district court read a description provided by the government and asked Yang if he agreed. Yang responded:

> I was – that day I was playing a video game. So after my head injury, I wasn't sure what was going on. I was confused of everything, and I just thought that things that was wrong were right. After playing the video game, I just thought that

> I was in the video game, and I went to go rob a bank.

Attorney Musolf was then asked about the validity of Dr. Berney's report. He responded, "[w]e do acknowledge the report, and I guess we agree it doesn't rise to the level of a legal insanity defense despite the fact that there are some issues." The court accepted Yang's guilty plea.

His plea did not last long, though. Just over a month later, Yang wrote the court asking for a new attorney and seeking to withdraw his guilty plea. In the letter, Yang complained that Musolf had not reviewed Dr. Berney's report with him and generally ignored his questions. At a hearing, Musolf said that he did review the report with Yang but that he did not provide Yang with a copy. He explained he "was concerned about [Yang] having a copy of the report" in jail because it contained confidential information.

The court granted Yang's request for new counsel and appointed Thomas Phillip, a federal public defender. Phillip arranged for a second psychological evaluation. Dr. Denver Johnson conducted that evaluation and concluded "to a reasonable degree of certainty that the multiple mental conditions that Mr. Yang was experiencing at the time of the crime seriously impaired his judgment and the ability to appreciate the nature and quality of as well as the wrongfulness of his acts." Yang then moved to withdraw his guilty plea and to reassert the insanity defense, which the court granted.

Before trial, the court had another opportunity to observe Yang at a hearing on Yang's requests to waive his right to a jury trial and elect a bench trial. Phillip explained that he and Yang had discussed what a bench trial is, the differences

between a bench trial and a jury trial, and the benefits and
drawbacks of each. After consideration, Yang decided that he
wanted a bench trial. The court explained to Yang how a
bench trial would work, which party had the burdens of
proof, and that the judge would decide the law and the facts.
Yang said he understood. The district court also described
what Yang would give up in passing on a jury trial, and Yang
again expressed his understanding. Yang had no additional
questions. And when the judge asked Yang how he was feel-
ing, Yang remarked that he felt good that day. He also said,
"[t]hroughout my time in the trial, I've recovered a little bit
and I'm starting to feel like myself more."

The court then asked Phillip if he had any concerns about
Yang's competency to proceed. Phillip responded:

> No, I believe that he's competent to make this
> decision, and we've discussed it at length over
> several meetings and we've discussed the pos-
> ture of the case at length over several meetings,
> so I think he's making a knowing decision and
> a voluntary decision to waive the jury.

The court accepted Yang's jury trial waiver.

The only issue at the bench trial was Yang's insanity de-
fense, and Dr. Berney and Dr. Johnson testified.[1] After hear-
ing this testimony, the district court concluded that Yang did
not meet his burden to prove his insanity at the time of the

---

[1] The parties stipulated to the surveillance video capturing the rob-
bery and the video of law enforcement's post-arrest interview of Yang.
When Yang was asked whether he understood that a stipulation meant he
admitted those facts as true, and whether he made the decision to stipulate
after careful discussion with his attorney, he answered, "yes."

bank robbery. The "most powerful evidence" in the district court's eyes was the video interview conducted after Yang was arrested. During that interview, Yang was able to communicate with the detective and said he understood his rights. The court explained this demonstrated that "whatever intellectual deficits Mr. Yang has, they are not significant as a functional matter." The court viewed the evidence of a mental defect as "very suspicious," as there was "no record other than [Yang's] say so." The court then found Yang guilty on all three counts.

The district court held a sentencing hearing. Yang accepted the opportunity to allocute. He apologized for his actions as well as to the employees of the credit union, and he recognized that he affected the lives of those employees and his own family. Yang said he had plans to further his education, and he acknowledged that, as a father, duties and responsibilities awaited him following his incarceration. In fashioning a sentence, the district court noted "how bizarre this crime was and is" and reiterated its reasons for rejecting Yang's insanity defense. The Court imposed a sentence of 168 months' imprisonment.

Neither defense counsel nor the government raised any concerns as to Yang's competency during the bench trial or at sentencing.

**B**

Yang did not directly appeal his conviction. Instead, he moved to vacate his sentence under 28 U.S.C. § 2255. In that motion, he claimed his second attorney, Phillip, provided ineffective assistance of counsel. The court concluded that the motion warranted an evidentiary hearing and appointed

counsel. Yang's new counsel then filed a second amended petition, withdrawing Yang's ineffective assistance claim and asserting that the court's failure to hold a competency hearing during his criminal proceedings violated due process.

The court held an evidentiary hearing in which the court began by asking Yang's counsel why Yang's claim had not been procedurally defaulted. Yang's counsel responded that procedural default did not apply. Because the claim "require[d] evidence that is outside the record to fully determine" it, counsel asserted the claim fell within the category of claims that could not be brought first on direct appeal. Missing, counsel specified, was the testimony of Yang's probation officer, Brian Koehler, and the "helpful opinion of a psychologist who can explain to us what was missed the first time around." The district court was inclined to find that Yang's claim was procedurally defaulted. But it permitted Yang to put on evidence as to its merits "to make a full record here so the Court of appeals or even this Court can decide on the basis of what else is there."

The court observed that Yang, in framing his § 2255 claim as a competency claim, "essentially shielded from the Court the best evidence as to what his competency actually was at the time in question … leav[ing] the Court kind of and even [the] appellate court in the dark as to key evidence surrounding the issue." That best evidence was from attorney Phillip, whom the district court ordered to testify. Yang's counsel requested a stay of that order based on attorney-client privilege, pending appeal. The court granted the stay, so Phillip did not testify.

Yang called probation officer Koehler and Dr. Johnson to testify at the evidentiary hearing. Koehler described one of his

interviews with Yang following the change of plea hearing. He testified that Yang's memory issues so pervaded the interview that he had to cut it short. On cross-examination, Koehler admitted that in another pretrial study performed by the probation office, Yang recalled many more personal details.

Dr. Johnson testified about the psychological examination he performed to evaluate Yang's sanity at the time of the offense. Though not called upon to evaluate Yang's competency, Dr. Johnson testified he believed then that Yang "would not be competent to give a true accounting of what happened, to reason properly about it." He opined it was "very likely that [Yang] was incompetent to stand trial," but because he couldn't say for sure, "we would want to do a competency evaluation to establish that." The court elicited that Dr. Johnson never raised concerns about Yang's competency with Phillip. At the close of the hearing, the court granted Yang's counsel permission to file further briefing.

In post-hearing briefing, Yang argued against a finding of procedural default. Seventh Circuit precedent, he asserted, prohibited the application of procedural default to competency claims. Yang also turned to caselaw from the Eleventh Circuit to resist the application of procedural default. That court divides postconviction competency claims into procedural and substantive claims, holding that the former but not the latter may be procedurally defaulted.

The district court denied Yang's § 2255 motion. The court—relying on Seventh Circuit and Eleventh Circuit caselaw—agreed with the government:

> [B]y failing to raise the issue of his competency to stand trial in court or on direct appeal, and

now by withdrawing his ineffective assistance of counsel claim and barring crucial evidence on the issue by asserting his attorney-client privilege, Yang has procedurally defaulted both his procedural and substantive competency claims.

Even if not procedurally defaulted, Yang's claims failed on the merits, the court explained, because the court did not believe it erred by "failing to *sua sponte* order a competency evaluation" and because "Yang was competent at the time of the proceedings." The district court issued a certificate of appealability.

## II

On appeal, Yang challenges the district court's procedural default determination, its merits findings, and its stayed order requiring attorney Phillip to testify at the evidentiary hearing. We examine only the procedural default question. Supreme Court precedent on competency, our court's caselaw, and the decisions of other courts convince us that procedural default may bar a competency claim. Applying that doctrine to the facts here, Yang defaulted his claim and is barred from raising it.

## A

Three Supreme Court cases form the foundation for the law on a defendant's competency. In *Dusky v. United States*, the Court set forth the seminal test for determining a criminal defendant's competency: "whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." 362 U.S. 402, 402 (1960).

In *Pate v. Robinson*, 383 U.S. 375 (1966), the Court added to this law. There, the Court ruled that the habeas petitioner "was constitutionally entitled to a hearing on the issue of his competence to stand trial." *Id.* at 377. In so concluding, the Court announced additional rules safeguarding a criminal defendant's right to a fair trial in the context of a defendant's competency. First, criminal defendants cannot waive competency *Id.* at 384. This is because waivers of rights must be knowing and intelligent. And if a defendant is incompetent, then the defendant cannot meet that waiver standard. *Id.* Second, where the evidence calls into question a defendant's competency, the trial court's failure to inquire into the defendant's competency abridges the constitutional right to a fair trial. *Id.* at 385. Applying these rules, the Court reasoned that the petitioner's history of "pronounced irrational behavior" should have triggered the state courts to invoke Illinois' statutory procedures designed to protect a defendant's right to a fair trial. *Id.* at 385–86.

*Drope v. Missouri*, further shaped this area of law. 420 U.S. 162 (1975). Like in *Pate*, the Court held that the Missouri state courts failed to give proper weight to record evidence that should have prompted further inquiry into the defendant's competency to stand trial. *Id.* at 179. The Court noted that "a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Id.* at 171. Additionally, the Court in *Drope* described *Pate*'s holding as "the failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial." *Id.* at 172. The import of *Pate*, the Court added, is "that

evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required … ." *Id.* at 180. Moreover, because a defendant may flit in-and-out of competency, "a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competency to stand trial." *Id.* at 181.

*Dusky*, *Pate*, and *Drope* have served as the wellspring for resolving other competency issues addressed by the Supreme Court. *See Medina v. California*, 505 U.S. 437, 442 (1992) (holding that a state may place the burden on a defendant to prove incompetency by a preponderance of the evidence); *Godinez v. Moran*, 509 U.S. 389, 391 (1993) (holding that the standard of competency for pleading guilty or waiving the right to counsel is the same as that for standing trial); *Indiana v. Edwards*, 554 U.S. 164, 169–70 (2008) (noting that *Dusky* and *Drope* help to frame the question of whether it is constitutionally permissible to find a defendant competent to stand trial but not so competent that he must be represented by counsel).

This court has built on those cases. In this circuit, the competency inquiry, generally, "focuses on 'whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.'" *Burt v. Uchtman*, 422 F.3d 557, 564 (7th Cir. 2005) (quoting *Dusky*, 363 U.S. at 402). The competency requirement "at its core, preserves the right to a fair trial," but also safeguards fairness throughout criminal proceedings, as it also applies to pleas and sentencing proceedings. *Anderson v. United States*, 865 F.3d 914, 919 (7th Cir. 2017)

(citing *Godinez*, 509 U.S. at 391, and *United States v. Garrett*, 903 F.2d 1105, 1115 (7th Cir. 1990)). Thus, courts have a role in promoting "the fundamental principle that it is unjust to punish a person who lacks the mental capacity to understand the proceedings against him and participate in his own defense." *McManus v. Neal*, 779 F.3d 634, 656 (7th Cir. 2015)

Congress has also codified a procedure for raising competency issues. *See* 18 U.S.C. § 4241. The parties have a role in that procedure:

> At any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant, or at any time after the commencement of probation or supervised release and prior to the completion of the sentence, the defendant or the attorney for the Government may file a motion for a hearing to determine the mental competency of the defendant.

*Id.* § 4241(a). Congress has provided the district courts with the authority—in conjunction with and independent of the parties—to sua sponte raise the issue of competency:

> The court shall grant the motion [for a hearing], or shall order such a hearing on its own motion, if there is a reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequence of the proceedings against him or to assist properly in his defense.

*Id.* We evaluate the parties' arguments under these bodies of law.

**B**

Neither the Supreme Court nor our court has resolved whether the doctrine of procedural default bars competency claims raised for the first time on collateral review. But the majority of our fellow circuits have, doing so by bifurcating competency claims into procedural and substantive claims. *See United States v. Basham*, 789 F.3d 358, 379 (4th Cir. 2015); *United States v. Flores-Martinez*, 677 F.3d 699, 705–06 (5th Cir. 2012); *Hodges v. Colson*, 727 F.3d 517, 540 (6th Cir. 2013); *Vogt v. United States*, 88 F.3d 587, 590–91 (8th Cir. 1996); *Williams v. Woodford*, 384 F.3d 567, 603–610 (9th Cir. 2004); *Lay v. Royal*, 860 F.3d 1307, 1314–15 (10th Cir. 2017); *Raheem v. GDCP Warden*, 995 F.3d 895, 928–29 (11th Cir. 2021). Because the parties' arguments and the district court's order rely on this bifurcation, we consider whether our court should recognize it as well.

Our companion circuits derive the procedural claim from *Pate*'s holding that the due process right to a fair trial is deprived by a trial court's failure to inquire into a defendant's competency when required by applicable procedures. 383 U.S. at 385; *see also, Drope*, 420 U.S. at 172 (describing *Pate*'s holding). Procedural competency claims typically arise where the trial court fails to hold a competency hearing or comply with Congress's directives in 18 U.S.C. § 4241. *See Flores-Martinez*, 677 F.3d at 705–06; *see also, Basham*, 789 F.3d at 379 (describing a procedural claim as when "the movant contends that the trial court failed to properly ensure that the accused was competent to stand trial, as required by 18 U.S.C. § 4241"); *Vogt*, 88 F.3d at 591 (noting "the issue in a procedural

competency claim is whether the trial court should have conducted a competency hearing"); *James v. Singeltary*, 957 F.2d 1562, 1571 (11th Cir. 1992) (same). To succeed on a procedural competency claim, a petitioner must point to evidence before the trial court that should have raised a bona fide doubt as to his competency. *See Flores-Martinez*, 677 F.3d at 706; *Williams*, 384 F.3d at 603–04 (citing *Pate*, 383 U.S. at 385).

On the other hand, our fellow circuits derive substantive claims from the Supreme Court's language in *Dusky* and *Drope*. At bottom, that language means criminal defendants should not be tried while incompetent. *See Basham*, 789 F.3d at 379; *Flores-Martinez*, 677 F.3d at 705; *Vogt*, 88 F.3d at 590; *McGregor v. Gibson*, 248 F.3d 946, 952 (10th Cir. 2001); *James*, 957 F.2d at 1571. Therefore, to succeed on a substantive claim, "an accused must prove an inability either to comprehend or participate in the criminal proceedings." *Flores-Martinez*, 677 F.3d at 706 (citation omitted). That is, a defendant "must show that, at the time of trial, he lacked either sufficient ability to consult with his lawyer with a reasonable degree of rational understanding, or a rational and factual understanding of the proceedings against him." *Williams*, 384 F.3d at 608 (citing *Dusky*, 362 U.S. at 402).

In our circuit, some previous cases described separate substantive and procedural rights in the competency context. *See United States ex rel. Rivers v. Franzen*, 692 F.2d 491, 495 (7th Cir. 1982) (describing *Dusky* and *Pate* as the Supreme Court's delineation of separate substantive and procedural due process rights), *abrogated in part on other grounds recognized in United States ex rel Mireles v. Greer*, 736 F.2d 1160, 1168 n.4 (7th Cir. 1984); *Greer*, 736 F.2d at 1165 (discussing *Franzen*); *Woods v. McBride*, 430 F.3d 813, 819–20 (7th Cir. 2005) (addressing both

the "procedural matter" and "substantive matter" of petitioner's due process competency argument). But since *Woods*, our court has not referenced the distinction. *See United States v. Savage*, 505 F.3d 754, 758–60 (7th Cir. 2007) (holding on direct appeal that district court did not err in declining to sua sponte order a competency hearing under 18 U.S.C. § 4241); *Anderson*, 865 F.3d at 920–22 (7th Cir. 2017) (concluding district court erred in failing to hold a § 2255 evidentiary hearing to explore whether petitioner was incompetent when he pleaded guilty and at sentencing); *United States v. Wessel*, 2 F.4th 1043, 1059 (7th Cir. 2021) (holding on direct appeal that district court did not err in finding defendant competent to stand trial).

Given this state of the law and the parties' arguments in the collateral proceedings before the district court and on appeal, we now take the opportunity to clarify competency law in our circuit.

Competency pertains to a singular due process right to a fair trial under the Fifth Amendment. *See Anderson*, 865 F.3d at 919 (7th Cir. 2017) (citing *Drope*, 420 U.S. at 171–72). In the context of a fair trial and a defendant's competency, we look to whether a defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Drope*, 420 U.S. at 172 (quoting *Dusky*, 362 U.S. at 402). And *Drope* explains how *Pate* relates to *Dusky*: *Pate* tells us that "the failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial." *Drope*, 420 U.S. at 172. Our court's earlier references to separate

"substantive" and "procedural" rights are confusing. We do not see a bifurcation between procedural competency and substantive competency rights.

## C

The question for us to answer, then, is whether procedural default doctrine bars a competency-based due process claim when a petitioner raises that claim for the first time on collateral review.

Our fellow circuits—tying the analysis to the bifurcation of competency claims—have reached disparate answers to the question. The Eighth and Ninth Circuits hold that a petitioner may procedurally default both procedural and substantive competency claims. *See Lyons v. Luebbers*, 403 F.3d 585, 593 (8th Cir. 2005); *Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1306–07 (9th Cir. 1996). The Fourth and Sixth Circuits hold that substantive competency claims are subject to procedural default. *See Basham*, 789 F.3d at 379 n.10 (citing *Smith v. Moore*, 137 F.3d 808, 819 (4th Cir. 1998); *Hodges*, 727 F.3d at 540. The Fifth Circuit has reached the same conclusion in an unpublished case. *Green v. Lumpkin*, 2023 WL 2941470, at *3 (5th Cir. Apr. 13, 2023).[2] The Tenth and Eleventh Circuits, however, hold that procedural default doctrine bars only procedural competency claims, but not substantive competency claims. *See Lay*, 860 F.3d at 1315; *Raheem*, 995 F.3d at 928–29. These courts reason that procedural competency claims must be raised first on direct appeal "because an appellate court hearing the claim 'may consider only the information before the trial court

---

[2] We could not locate any decision from the Fourth, Fifth, or Sixth Circuits speaking to whether procedural competency claims may be procedurally defaulted.

before and during trial.'" *Medina v. Singeltary*, 59 F.3d 1095, 1106 (11th Cir. 1995) (quoting *James*, 957 F.2d at 1572). But substantive competency claims cannot be subject to procedural default because of the Supreme Court's determination that criminal defendants may not waive the right to be tried only while competent. *See, e.g., Adams v. Wainwright*, 764 F.2d 1356, 1359 (11th Cir. 1985) (citing *Pate*, 383 U.S. at 384), *abrogated on other grounds as recognized in Granda v. United States*, 990 F.3d 1272, 1294 (11th Cir. 2021).

We align ourselves with the emerging consensus that procedural default may apply to a competency-based due process claim. As seen in our discussion above, *supra* II.B., our circuit does not adopt a distinction between substantive and procedural competency claims, but we reach the same conclusion as those that hold competency claims can be barred under procedural default doctrine.

Yang presents three arguments to the contrary. He analogizes procedural default and waiver, compares competency claims on collateral review to ineffective assistance of counsel claims in the same context, and asserts that our decision in *Anderson v. United States*, 865 F.3d 914, previously concluded that procedural default doctrine cannot bar competency claims on collateral review. None of these arguments are persuasive.

First, he contends that procedural default does not apply because competency is not waivable. But this contention is unconvincing because it conflates waiver and procedural default. *See Hodges*, 727 F.3d at 540. Waiver is the intentional relinquishment of a known right. *See United States v. Flores*, 929 F.3d 443, 447 (7th Cir. 2019). As *Pate* recognizes, waiver cannot be applied to competency in the original trial proceedings

because the potentially incompetent defendant cannot knowingly and voluntarily relinquish his rights. 383 U.S. at 384. Default, however, is a different animal. It is a "failure to act when action is required." *Default*, GARNER'S DICTIONARY OF LEGAL USAGE (3d ed. 2011).

Yang argues that *Pate*'s recognition of a defendant's inability to waive competency implies that procedural default cannot apply. In his view, it is contradictory to prohibit waiver but to permit procedural default. But the law can prohibit a defendant from waiving competency before a trial court, while still subjecting competency claims to default for failing to observe the proper procedures in a collateral attack. Nearly fifty years ago, in the § 2254 context, the Supreme Court rejected as "sweeping" a rule that "would make federal habeas review generally available to state convicts absent a knowing and deliberate waiver of the federal constitutional contention." *Wainwright v. Sykes*, 433 U.S. 72, 87–88 (1977). And the comparison of default to waiver is particularly unavailing in the § 2255 arena where default roots itself in finality and procedural efficiency. *See United States v. Frady*, 456 U.S. 152, 164–65 (1982) ("Our trial and appellate procedures are not so unreliable that we may not afford their completed operation any binding effect beyond the next in a series of endless postconviction collateral attacks. To the contrary, a final judgment commands respect."). We thus reject Yang's argument that procedural default does not apply because competency is not waivable.

Second, Yang analogizes his competency claim to an ineffective assistance of counsel claim. He asserts these claims are similar because both are poorly situated for direct review in the first instance—they both "involve evidence outside the

record" and a "reviewing court on direct appeal is limited to the record of trial and cannot consider any extrinsic evidence that may be necessary to support" them. Appellant's Brief at 20, quoting *Galbraith v. United States*, 313 F.3d 1001, 1007–08 (7th Cir. 2002).

This court has been reluctant to broaden the exception to the procedural default doctrine beyond ineffective assistance of counsel. In *Delatorre v. United States*, we held that a prosecutorial misconduct claim raised for the first time in a § 2255 motion was procedurally defaulted. 847 F.3d 837, 844 (7th Cir. 2017). In doing so, we rejected an argument that prosecutorial misconduct claims were like ineffective assistance of counsel claims—"so inextricably linked to extrinsic evidence that it could not have been properly considered on direct appeal." *Id.* That is because "prosecutorial misconduct claim[s] … do[] not, by [their] very nature, require augmentation of the record." *Id.* In contrast, ineffective assistance of counsel claims "are almost invariably doomed on direct review because they often require augmentation of the record with extrinsic evidence, which cannot be considered." *Id.* (internal quotation marks omitted).

But competency claims are not "invariably doomed," *id.*, on direct review because of a lack of record evidence. Defendants regularly raise, and this court addresses, competency claims on direct review of criminal convictions and sentences. *See United States v. Anzaldi*, 800 F.3d 872, 877–80 (7th Cir. 2015) (holding district court did not abuse its discretion in declining to order a competency evaluation); *United States v. Stoller*, 827 F.3d 591, 596 (7th Cir. 2016) (holding a district court did not abuse its discretion in declining to hold a hearing on defendant's competency); *United States v. Ewing*, 494 F.3d 607, 622-23

(7th Cir. 2007) (same). Moreover, analogizing competency claims to ineffective assistance claims and permitting Yang (and future petitioners) to avoid procedural default countenances the gamesmanship that the district court feared was playing out in the proceedings before it. As that court noted, there is one witness who can testify directly as to whether Yang was competent—attorney Phillip. But because Yang does not assert an ineffective assistance of counsel claim, he may assert attorney-client privilege to shield Phillip's thoughts on competency.

Ultimately, Yang wants a special procedural default exemption for competency claims. We see no reason to recognize one, especially when our court consistently applies the procedural default doctrine to other claims raised for the first time in § 2255 motions. *See Conley v. United States*, 5 F.4th 781, 799 (7th Cir. 2021) (holding that due process claim rooted in unrecognized "outrageous government conduct" theory was otherwise procedurally defaulted); *McCoy v. United States*, 815 F.3d 292, 295–96 (7th Cir. 2016) (holding defendant defaulted claim that magistrate judge exceeded authority under Federal Magistrates Act and Article III by failing to raise issue on direct appeal or in § 2255 motion); *Theodorou v. United States*, 887 F.2d 1336, 1341 (7th Cir. 1989) (holding that defendant's failure to raise his constitutional claim of a due process violation on direct appeal precluded him from raising the issue in a § 2255 proceeding). Constitutional claims in the collateral review context (save for ineffective assistance of counsel claims) are almost always tethered to arguments regarding deprivation of a due process right to a fair trial. We routinely apply procedural default doctrine to those claims, and Yang does not convince us to depart from that general rule.

Third, Yang relies on *Anderson* to argue that our court does not apply procedural default doctrine to competency claims. He submits that, "as the Seventh Circuit's most recent opinion applying the Due Process competency framework, [*Anderson*] should have supplied the roadmap for the district court's decision here." Anderson pleaded guilty to being a felon in possession of a firearm. 865 F.3d at 916. As this court described it, though the district court had some "general knowledge of Anderson's mental health problems," it was unaware of the illnesses he suffered, the medication he was prescribed, and how the medication affected him. *Id.* In the underlying criminal proceeding, neither the court, Anderson's counsel, nor the government raised the issue of Anderson's competency. *Id.* Anderson's plea agreement foreclosed a direct appeal, so following his conviction and sentence he sought § 2255 relief, arguing (1) that he was not competent at the time of his plea and (2) that his counsel was constitutionally defective in failing to raise the issue of his competency. *Id.* The district court rejected Anderson's petition without holding an evidentiary hearing. *Id.*

This court's decision in *Anderson* addressed only whether the district court should have held an evidentiary hearing before ruling on the petition. *Id.* The court concluded that an evidentiary hearing was needed: "Because the district court lacked a full picture of Anderson's mental health, its finding that Anderson had the capacity to plead guilty rests on a flawed factual foundation that must be explored in a hearing." *Id.* at 920. Informing this conclusion were facts that "the district court knew Anderson was a paranoid schizophrenic" and that "Anderson disclosed his use of unspecified psychotropic drugs" in the underlying proceedings. *Id.*

*Anderson* does not support Yang's argument that our court would not apply procedural default to his § 2255 competency claim. Though *Anderson* certainly sketches out the general principles governing competency and due process, it does so while resolving a narrow issue: the necessity of a § 2255 evidentiary hearing. That issue is not pertinent here because the district conducted an evidentiary hearing.

Although neither our court nor the district court determined that Anderson's competency claim was procedurally defaulted, that was because no party addressed procedural default. Additionally, though not discussed by the court in *Anderson*, a different procedural background may have counseled a different result on the issue of procedural default had it been raised. Unlike here, where Yang was free to seek the direct appeal of his conviction and sentence, Anderson was foreclosed from seeking any direct appeal by the terms of his plea agreement. 865 F.3d at 916. These differences make *Anderson* distinguishable.

## D

Having determined that the doctrine of procedural default applies to competency claims, we apply it here. "A claim not raised on direct appeal generally may not be raised for the first time on collateral review and amounts to procedural default." *White v. United States*, 8 F.4th 547, 554 (7th Cir. 2021). Usually, when confronted with procedural default, a petitioner can overcome that hurdle by showing "either cause for the default and actual prejudice from the alleged error, or that he is actually innocent." *Id.*

Application of these principles is straightforward here and requires denial of Yang's motion. Neither Yang nor his

counsel raised the issue of competency before the trial court. In fact, at two different times, both attorney Musolf and attorney Phillip said they saw no impediment to proceeding based on Yang's competency.

And Yang did not directly appeal his conviction and sentence, electing instead to move under § 2255 to vacate his sentence. At first, Yang's motion raised the ineffective assistance of counsel issue. Only after the court concluded that an evidentiary hearing was warranted and appointed counsel did Yang, through his new counsel, withdraw his ineffective assistance claim and raise the competency claim at issue here. Yang did not attempt to make the traditional showing of cause and prejudice or of actual innocence in bringing his claim. Nor has he asserted those exceptions here on appeal to overcome procedural default. Therefore, Yang's petition must be dismissed.[3]

## III

Yang is not entitled to collateral relief under § 2255 because he procedurally defaulted his competency claim in his second amended petition. The district court concluded the same after presiding over Yang's criminal trial and conducting a complete inquiry into Yang's claim on collateral review. Therefore, we AFFIRM the denial of Yang's § 2255 motion.

---

[3] In its thoroughness, the district court addressed the merits of Yang's § 2255 motion. As stated above, because we conclude that Yang procedurally defaulted his claim, we decline to address the merits. For the same reason we need not resolve Yang's challenge to the district court's order that attorney Phillip testify at the evidentiary hearing.