In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 24-2134

JACOB ALAN POWERS,

*Petitioner-Appellant,*

*v.*

JON NOBLE,

*Respondent-Appellee.*

———————————

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:10-cv-01127-WED — **William E. Duffin**, *Magistrate Judge.*

———————————

ARGUED JANUARY 14, 2025 — DECIDED MARCH 25, 2025

———————————

Before RIPPLE, BRENNAN, and KOLAR, *Circuit Judges.*

BRENNAN, *Circuit Judge.* A Wisconsin jury in 2006 found
Jacob Powers guilty of enticing and twice sexually assaulting
a 13-year-old girl. Powers unsuccessfully challenged those
convictions in state court, raising various claims on both di-
rect and collateral review. Powers now seeks federal habeas
corpus review, claiming he lacked competency at his trial and
that his lawyer was ineffective for not raising this issue.

The district court denied his petition, so Powers appeals. Looking back almost two decades—and considering three posttrial evaluations of Powers's competency, his demeanor at trial, and that his appellate attorney spoke with his trial counsel and chose not to pursue an incompetency claim—we agree with the district court and affirm.

**I**

**A**

Powers is no stranger to life's difficulties. He was physically and psychologically abused as a child, and though he has significant learning challenges, he graduated from high school. His criminal record, however, is extensive. He has been arrested many times, several of which were for violent offenses. He was charged in 1999 with felony child abuse for battering his newborn son, but he was found not guilty by reason of mental disease or defect. *See* WIS. STAT. § 971.15.

In 2005, Powers was charged with two counts of second-degree sexual assault of a child and one count of child enticement. At trial in 2006, the jury heard conflicting accounts of the events that led to those charges.

Powers testified in his own defense. He recounted he was living in the central Wisconsin town of Ripon at the time. Early in the day, Powers saw his neighbor, Trista Beek. Walking with Beek was K.B., a 13-year-old whom Powers did not recognize. Later that night, K.B. entered Powers's apartment without knocking. Despite not knowing her, Powers "did not think anything of it," gave her a soda, and they talked about her depression. A friend of Powers, Matt Galica, was also there. At some point, Galica and K.B. were left alone, and Powers later caught them kissing in their underwear. He told

Galica, "Don't get caught," and went to bed. In the morning, Beek came over and took K.B. to Beek's home.

K.B.'s trial testimony contradicted Powers's testimony. She testified she met him earlier in the day, and he told her she could come to his apartment if she needed anything. K.B. went there late that night wanting to talk about her problems, and they talked for about an hour and a half. Galica then walked into Powers's apartment. Soon after, Powers and Galica went outside to talk. According to K.B., they came back in and sat on each side of her. They told K.B. they loved her, to go to the bedroom, and to take off her clothes. Powers, then Galica, then Powers again, sexually assaulted K.B.

The jury also heard from other witnesses, including Galica, who gave a similar account as K.B., and Beek, who said Powers later told her he had sexual intercourse with K.B. The jury found Powers guilty on all three counts. The court sentenced him to 33 years in prison.

**B**

**1**

Powers appealed his conviction and sentence. An appellate attorney was appointed, and in April 2007, she moved the court to have his competency evaluated. Two experts examined Powers, filed their conclusions, and testified at an October 2007 competency hearing held in state court.

First, Dr. Nathan Glassman interviewed Powers and concluded he was "moderately impaired" and read at about a 5th-grade level. The doctor also had serious concerns whether Powers could retain complex information.

But Dr. Glassman noted that Powers could think strategically about his trial. For example, Powers believed his testimony hurt his case and maintained that testimony from his then-girlfriend would have buttressed his defense. Also, Dr. Glassman reported that "insufficient effort" and distractions could explain why Powers performed poorly in the evaluation. The doctor's report was inconclusive as to competency on appeal, but he later testified at the competency hearing that he believed Powers lacked competency at that time.

In a second evaluation, Dr. Craig Schoenecker concluded differently. He interviewed Powers and examined his trial records and Dr. Glassman's report. Dr. Schoenecker found Powers "was able to consistently understand questions and provide accurate answers." Powers was "calm and cooperative" and "readily understandable." He did not "express any delusional beliefs or exhibit any paranoia." Dr. Schoenecker noted that, at trial, Powers knew he could ask his attorney questions. In Dr. Schoenecker's opinion, Powers was competent.

The state trial court found Dr. Schoenecker's conclusion more persuasive. It concluded Powers was competent and could proceed with his appeal. His appellate attorney then investigated whether there were any issues of arguable merit. Pertinent to her consideration, she "reviewed the time sheets submitted by [trial counsel] to the State Public Defender for payment and discussed" Powers's competency with his trial counsel.[1] His appellate attorney then filed a no-merit report with the Wisconsin Court of Appeals—a brief that summarizes the record, highlights legal arguments, and explains

---

[1] ECF No. 22-3 at 22.

why they are frivolous. *See* WIS. STAT. § 809.32. She analyzed a possible ineffective assistance of counsel claim against Powers's trial counsel for not raising competency, but she concluded that to appeal on that ground would be frivolous.

In May 2008, the state court of appeals accepted the no-merit report and affirmed Powers's convictions. It concluded Powers's trial counsel was not ineffective for failing to pursue competency. The state court of appeals acknowledged that despite Powers's low IQ and mental health problems, his trial testimony gave no indication that he lacked competency. Powers did not ask for review by the Wisconsin Supreme Court, so his convictions became final in June 2008. He then filed for state postconviction relief, which the state trial court and state court of appeals denied.[2] In 2010, he sought review by the Wisconsin Supreme Court of his direct appeal and postconviction appeals. That court denied his request for review in each case.

**2**

Turning to the federal courts, Powers petitioned for a writ of habeas corpus in December 2010. He sought relief on several grounds, including that he was not competent at the time of trial and that his trial counsel was ineffective. We highlight several decisions and filings during that period.

First, Powers's habeas petition had several problems. A petition must be filed within one year after the conviction becomes final, 28 U.S.C. § 2244(d)(1)(A), but he waited over two

---

[2] Powers did not argue to the Wisconsin Court of Appeals that he lacked competency at his criminal trial. But on direct review, he argued incompetency at the time of his appeal to that court. Incompetency on appeal and during trial are different claims.

years to do so—from June 2008 to December 2010. The petition included claims that had not been presented to the state court, violating a prerequisite for federal habeas review. The state moved to dismiss for procedural default. In response, Powers withdrew all claims except the two he argues here, effectively amending his petition. The state withdrew its motion to dismiss and waived its procedural defense, although if the state had maintained that defense, Powers's claim could not have been heard.[3]

But Powers still filed his habeas petition too late. He claimed his mental defects impeded him from filing on time and requested a mental health evaluation. A third expert, Dr. Sheryl Dolezal, evaluated Powers, first in 2013 and again in 2015. Initially, Powers asked her to opine on whether he could read, understand, and reply to information the courts sent to him. She concluded he would have difficulty without assistance. Powers then sought a full competency opinion from Dr. Dolezal. In her second report, she concluded Powers had a basic understanding of legal concepts, the roles of individuals in the court system, and the "consequences associated with the judicial process," but he had some difficulty with reading and comprehension. Dr. Dolezal also suggested Powers was "feigning or over-exaggerating" his symptoms. She found him competent to proceed.

In August 2015, almost five years after filing his federal habeas petition, Powers amended his petition again, adding two new claims. In June 2016, the district court stayed proceedings for exhaustion of the new claims in state court. The state

---

[3] The parties disputed this in their briefs in our court, but the state conceded waiver before oral argument.

courts evaluated those claims, and after seven years of litigation, they rejected them.

The district court lifted the stay on Powers's federal habeas case in May 2023. But in November 2023, he amended his petition again. He withdrew those two new claims, so his habeas petition effectively reverted to where it had been seven years earlier: a petition asserting a due process violation as well as ineffective assistance of counsel. His case was ripe for resolution.

The district court denied relief, concluding "at no point was Powers incompetent." *Powers v. Noble*, No. 10-CV-1127, 2024 WL 2367988, at *8 (E.D. Wis. May 23, 2024).[4] The court based this conclusion on the three competency evaluations and Powers's trial testimony, among other evidence. *Id.* at *6–8. The court also concluded it was not unreasonable for trial counsel not to raise the issue of competency. Still, the district court certified an appeal to our court because "reasonable jurists could debate" its conclusions. *Id.* at *8.

## II

Powers claims he lacked competency at his state criminal trial as well as that his trial lawyer was ineffective for not raising competency. But Powers defaulted his claim that he lacked competency to stand trial. Because the state waived its procedural default argument, we review it de novo, as no state court has resolved the claim. *Cone v. Bell*, 556 U.S. 449, 472 (2009). Likewise, the district court's decision is reviewed de novo. *McMullen v. Dalton*, 83 F.4th 634, 641 (7th Cir. 2023).

---

[4] Both parties consented to the magistrate judge deciding this case.

**A**

We begin with Powers's competency claim. The Due Process Clause of the Fourteenth Amendment prohibits prosecuting a defendant who is not competent to stand trial. *Medina v. California*, 505 U.S. 437, 439 (1992). Competency turns on whether a defendant reasonably understands what is happening at trial and the charges against him to assist his lawyer in his defense. *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam); *see also Yang v. United States*, 114 F.4th 899, 906–09 (7th Cir. 2024). But the defendant need not understand everything, "that's why they need lawyers, after all." *Timberlake v. Davis*, 409 F.3d 819, 823 (7th Cir. 2005).

Though a competency inquiry at trial is preferable to an inquiry after trial, especially one many years later, courts can reach a conclusion with "evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion." *Drope v. Missouri*, 420 U.S. 162, 180 (1975). Especially insightful is the defendant's demeanor at trial—how he acts, speaks, and presents himself. *Eddmonds v. Peters*, 93 F.3d 1307, 1314 (7th Cir. 1996).

Addressing Powers's competency at a trial two decades ago is a challenge. To do so, we consider certain facts preceding trial, evidence at trial, and the posttrial record.

**1**

The evaluators agreed that Powers's IQ hovers between 60 and 75, which is considered to be in the "Borderline Intellectual Functioning/Mild Mental Retardation" range and about two standard deviations below the mean IQ of 100. *McManus v. Neal*, 779 F.3d 634, 646 n.3 (7th Cir. 2015). Though his low IQ provides pause, it is only one factor in the inquiry.

*Eddmonds*, 93 F.3d at 1314 (citing *Medina v. Singletary*, 59 F.3d 1095, 1107 (11th Cir. 1995)). This is because even a defendant with a low IQ can assist his lawyer at trial. The Supreme Court has recognized that individuals with a low IQ often know right from wrong. *Atkins v. Virginia*, 536 U.S. 304, 318 (2002). Powers's deficiency does not necessarily warrant "exemption from criminal sanction." *Id.*

Notable too is the charge against Powers for abusing his infant child in 1999. The state trial court found him not guilty by reason of mental disease or defect. Powers argues this finding shows he lacked competency at his sexual assault trial about seven years later.

But incompetency and the lack of mental responsibility defense are separate legal concepts, as the district court observed. *Compare* WIS. STAT. § 971.13 *with* WIS. STAT. § 971.15. An accused can insist he lacked mental responsibility when committing a crime, yet at trial understand the proceedings and assist his lawyer. *See Medina*, 505 U.S. at 449. Indeed, asserting the lack of mental responsibility defense presupposes competency. *Id.* ("The entry of a plea of not guilty by reason of insanity … presupposes that the defendant is competent to stand trial."). So, Powers can be presumed to have been competent in 1999.

These facts cut both ways. Powers has a low IQ, and he suffers from some mental deficiencies. But he was competent at his 1999 trial.

**2**

Next we turn to the trial record to assess Powers's conduct and consider whether he assisted in his defense, which is "[h]ighly relevant." *Eddmonds*, 93 F.3d at 1317.

Nothing about Powers's actions during trial suggests he lacked competency. *See Drope*, 420 U.S. at 181 (explaining a defendant should be observed "in the context of the trial"). The record conveys that Powers behaved appropriately. He did not act erratically, but seemingly he was polite and non-confrontational.

This court has ruled that a defendant's "detailed and coherent testimony" points toward competency. *Eddmonds*, 93 F.3d at 1319. At trial Powers testified in great detail about the events of that night, even after more than 11 months had passed. He recalled street addresses, described the clothes people wore, recalled that he gave K.B. a Mountain Dew, and remembered that Galica requested a Kid Rock song. His testimony gave a play-by-play of the night with precise time stamps, like that he woke up at 7:30 the following morning.

The trial record also shows that Powers recognized right from wrong. For example, he denied knowing K.B. was underage. And he recalled telling Galica, "Don't get caught," when he saw Galica and K.B. kissing in the bedroom in their underwear.[5] These statements show a "factual understanding of the proceedings against him," namely that sexual intercourse with someone of K.B.'s age is forbidden. *Yang*, 114 F.4th at 907 (quoting *Dusky*, 362 U.S. at 402).

---

[5] ECF No. 129-2 at 16, 17, 34.

Even more revealing are his statements on cross-examination. Powers testified to a witness's apparent motivations against him. He said he reported his neighbor Beek to the police for keeping an unsafe house, which could have motivated Beek to accuse him.[6] In addition, Powers thought it "very unusual" that somebody he did not know, K.B., walked into his apartment. According to Powers, "she walked in … just opened the door, and … asked me for a can of pop. I gave her a can of soda, and she sat down on my couch, and I'm sitting there in wonder."[7] So, along with recognizing right from wrong, Powers understood social conventions. He also acknowledged and tried to explain inconsistencies in his story, like why he lied to police about speaking with Galica.

What is more, the trial record suggests Powers understood the nature of the proceedings. His statements show clear memory, strategic thinking about his case, and recognition of right from wrong from the downright unusual. He acted as an accused is expected to, helping his lawyer develop evidence to confront and answer the case against him.

Also consider the actions of Powers's trial counsel. There was no competency evaluation before or at trial, and twenty years have passed since then. As an officer of the court, entrusted to advocate for his client, trial counsel is in the best position to know whether a defendant's competency is at issue, as he witnesses firsthand his client's mental state. *See Drope*, 420 U.S. at 176–77 ("judges must depend to some extent on counsel to bring issues into focus."). After conferring with Powers's trial counsel, his appellate attorney, when

---

[6] ECF No. 129-2 at 37–38.

[7] *Id.* at 31–32.

filing her no-merit report, did not pursue competency.[8] From this, we can reasonably infer that trial counsel thought Powers was competent during trial.

**3**

We next consider the various posttrial competency evaluations of Powers. In their reports, Dr. Schoenecker in 2007 and Dr. Dolezal eight years later both concluded Powers was competent when he was examined. Dr. Glassman also evaluated Powers in 2007 and testified six months later at a competency hearing that Powers lacked competency at that time. Their findings offer some insight into his competency at trial. *See Timberlake*, 409 F.3d at 823. The first two evaluations, performed about a year after trial, gave conflicting accounts.

Start with Dr. Glassman's report. Powers had told him the "Judge just looked at his file and decided he was Guilty." But this statement does not necessarily show that Powers misunderstood the jury's role. It could also reflect his frustration with the legal system, something common among criminal defendants. *Timberlake*, 409 F.3d at 823 ("Comments similar to those Timberlake made are common, sometimes because of suspiciousness … ."). Dr. Glassman concluded Powers had low intellectual functioning, but he had "some understanding" of the jury's role.

Dr. Glassman opined it would have been reasonable for Powers's trial counsel to raise competency at the time of trial. Powers urges us to view this as a retrospective assessment of his competency at trial. We do not agree. An opinion that an attorney should have raised competency at the time of trial is

---

[8] ECF No. 22-3 at 22.

not an expert witness's conclusion that a defendant lacks competency at trial. Even more, Powers's appellate attorney hired Dr. Glassman and questioned him on the witness stand. Yet, she concluded it was frivolous to argue that Powers's trial counsel was ineffective for failing to raise competency at trial. She could have pursued that argument if she had been persuaded to the contrary.

In his report, Dr. Schoenecker agreed with Dr. Glassman that Powers has mental health issues and a low IQ. But Dr. Schoenecker also reported Powers "readily discussed roles of court participants and court proceedings in his earlier trial." Powers also relayed ongoing issues in his appeal, recounted his defense, and expressed his wish for a new trial. Dr. Schoenecker concluded that Powers was competent to proceed with his appeal, though Powers needed "simplified explanations and clarification of more complicated concepts."

In January 2015, nearly a decade after Powers's trial, Dr. Dolezal evaluated Powers as to his competency. Though she offered some insight into his competency at trial, the substantial time gap presents "inherent difficulties." *See Drope*, 420 U.S. at 183. Dr. Dolezal concluded Powers was competent at that time, and that he understood basic legal concepts and the parties' roles. The results even suggested Powers may have feigned mental health symptoms.

The sum of the evidence supports a conclusion of competency. Powers's successful mental disease or defect defense in 1999 necessitated the conclusion that he was competent almost seven years before this criminal trial. *See Medina*, 505 U.S. at 449. Further, as detailed above, his testimony and demeanor at his criminal trial show him to be competent. Dr. Schoenecker found him competent less than a year after trial.

And importantly, Powers's trial attorney—who closely observed him and discussed legal and factual questions with him—did not raise competency concerns at trial. Even more, Powers's appellate attorney, after speaking with his trial counsel, believed pursuing the issue of competency would be frivolous. Last, Dr. Dolezal also concluded Powers was competent.

Moreover, all three experts agreed that Powers could understand complex topics if sufficient time was spent explaining them to him.[9] Powers argues his trial lawyer did not spend enough time with him to ensure he understood what was happening. But the standard requires that the client must know enough to understand the nature of the proceedings against him, *Drope*, 420 U.S. at 171, and his core trial rights. *Anderson v. United States*, 865 F.3d 914, 919–20 (7th Cir. 2017); *Newman v. Harrington*, 726 F.3d 921, 935 (7th Cir. 2013).

The record shows that Powers did. The evaluators concluded he knew what the judge, jury, and prosecutor did, and the basic charges against him.[10] Nor must he have understood every legal complexity. *Timberlake*, 409 F.3d at 823. Indeed, many people struggle to understand complex legal concepts, necessitating legal representation.

If we discounted the three evaluations as too attenuated from trial, that would place more emphasis on the other evidence of Powers's competency. His trial testimony, and his trial lawyer's decision not to raise competency before, during, or after trial, are persuasive proof of his competency.

---

[9] ECF No. 129-8 at 7, 16; ECF No. 103-2 at 12.

[10] ECF No. 129-8 at 7, 15–16; ECF No. 103-2 at 3,12.

Last, Powers directs us to his history of various mental health issues. He points to his past suicide attempts, psychiatric hospitalizations, and antipsychotic medications. But mental illness is not always linked with incompetency. "Not every manifestation of mental illness demonstrates incompetence to stand trial." *Eddmonds*, 93 F.3d at 1314 (quoting *United States ex rel. Foster v. DeRobertis*, 741 F.2d 1007, 1012 (7th Cir. 1984)). True, in certain cases, we have connected them. *See McManus*, 779 F.3d at 638–39, 657 (agreeing a defendant was entitled to a competency hearing after his severe symptoms resulted in hospitalizations and treatment with medications that turned his brain into "soup"). But mental illness is one factor among many when determining competency and is neither sufficient nor necessary. *See Drope*, 420 U.S. at 181 n.16.

Although Powers suffers from mental afflictions, they did not render him unable to understand the proceedings and assist his lawyer at trial. The great amount of record evidence of his competency supports this conclusion.

**B**

Powers makes one last argument. He claims the Wisconsin Court of Appeals, in its no-merit review, unreasonably concluded that his trial counsel was not ineffective for failing to raise competency at the time of trial. Because we conclude that Powers was competent at trial, his trial lawyer cannot be faulted for not pursuing the issue. *Matheney v. Anderson*, 377 F.3d 740, 749 (7th Cir. 2004) ("Because we agree with the state courts' finding that Matheney was competent to stand trial, it follows that the state courts did not err in concluding that Matheney's trial attorneys provided effective assistance."). And any other challenges to the Wisconsin Court of Appeals no-merit procedure would be outside the scope of the

certificate of appealability. *See Moreland v. Eplett*, 18 F.4th 261, 268 (7th Cir. 2021).

**III**

The record as a whole supports the conclusion that Powers was competent at his 2006 criminal trial. Accordingly, his trial counsel was not ineffective for failing to raise competency. We thus AFFIRM the district court's denial of the petition for a writ of habeas corpus.